HAWK v. McLEOD LUMBER COMPANY, Appellant.

Division Two, December 17, 1901.

1. **Bill of Exceptions:** MUTILATION: LOSS OF STENOGRAPHER'S NOTES. The court, in this case, in response to a certiorari challenging the integrity of the bill of exceptions, finds as a matter of fact that the bill being necessarily placed in the hands of the printer was soiled in his hands, but fails to find an authorized mutilation of the record, and also that the official copy of the stenographer's notes was lost without the fault of appellant and thereupon a carbon copy was used which it was necessary to correct before it was signed by the judge.

2. **Negligence:** FELLOW-SERVANTS: DETERMINED BY THE FACTS.  When a dispute arises as to whether or not plaintiff and the employee of de-

fendant, in charge of the machinery which caused the injury, were fellow-servants, the court on appeal must have the facts in order to solve the question.

3. ———: ———: ———: SAWYER: DECK-HAND. The sawyer and deck-hand at a sawmill were engaged in and about a common work. The injury to the deck-hand (the plaintiff) was due to the negligence of the sawyer, who had control over the sawmill and especially over the log carriage, the careless operation of which by the sawyer resulted in violently throwing a log against plaintiff's leg. It was the sawyer's business to operate the log carriage and to determine the dimensions of the pieces to be sawed, and plaintiff's duty was to keep the logs convenient to be put on the carriage. The plaintiff was employed by the foreman, "who runs around and bosses the men and finds them jobs." "He had the hiring of the men, gave a man his time and bossed around there." But there was testimony that the foreman always discharged a millman on the complaint of the sawyer. *Held,* that the sawyer was a fellow-servant and not a vice-principal, and, hence, their common master was not liable for plaintiff's injury.

Appeal from Butler Circuit Court.—*Hon. Jno. G. Wear,* Judge.

REVERSED.

*Percy Werner* and *W. N. Barron* for appellant.

(1)   Plaintiff, the deck-hand, and Whalen, the sawyer, being engaged in a common employment, and both at the time of the accident working together at the same work, to a common end, were fellow-servants.   Card v. Eddy, 129 Mo. 514; McCarty v. Rood Hotel Co., 144 Mo. 397; Miller v. Railroad, 109 Mo. 356; Marshall v. Schricker, 63 Mo. 308; Klochinski v. Lumber Co., 93 Wis. 417.   (2) Defendant's demurrer to plaintiff's testimony should have been sustained, or the court should have given the peremptory instruction in defendant's favor at the close of all the evidence in the case.   Marshall v. Schricker, supra; Hunt v. Railroad, 89 Mo. 607.   (3) Plaintiff was guilty of contributory negligence directly causing the in-

jury complained of.    (4) Instructions 1, 2, 3, 5 and 6, given
at the request of plaintiff, are each erroneous.    Jacquin v.
Grand Av. Cable Co., 57 Mo. App. 321; Keightlinger v. Egan,
65 Ill. 235; Rolling Mill Co. v. Morrisey, 111 Ill. 646; Rail-
road v. Jenkins, 174 Ill. 398; Railroad v. Farrell, 86 Ill. App.
436.    (5) The damages are excessive.

*C. L. Keaton, H. N. Phillips* and *R. H. Stanley* for re-
spondent.

(1)    There is no error in the record of this case.    The
petition is a plain, concise statement of plaintiff's cause of ac-
tion, which is fully sustained by plaintiff's evidence, and this
court will not reverse the case "if there be any substantial evi-
dence to support it."    Moore v. Farmer, 156 Mo. 46.    There
.is no statement and brief filed in this cause; no points and au-
thorities, as required by the statute and rules of this court, to-
wit:    Revised Statutes 1899, section 863, and rules 15 and 16,
and respondent expressly refuses to waive the same, and asks
that this court dismiss this appeal for a failure to comply with
said statute and rules of this court.    Disse v. Frank, 52 Mo.
551; Snyder v. Free, 102 Mo. 325; Flannery v. Railroad, 97
Mo. 195; Bobb v. Wolff, 148 Mo. 334.    (2) The superior
was not the fellow-servant of his subordinate in so far as, and
while he exercised authority to direct them in their labor, as
has been settled by many unanimous judgments of which but
few need be cited.    Foster v. Railroad, 115 Mo. 180; Keown
v. Railroad, 141 Mo. 93, and cases cited.    "Where the master
gives to a person power to superintend, control and direct the
men engaged in the performance of work, such person is to
the men under him a vice-principal, and it can make no differ-
ence whether he is called a superintendent, conductor, boss or
foreman," or head sawyer, directing a crew of men under him.
Miller v. Railroad, 109 Mo. 353; Donahoe v. Kansas City, 136
Mo. 657.    "The foreman was but the defendant itself acting

through another medium"—that is, Whalen, the man in charge of the gang at the saw.

GANTT, J.—I.   Preliminary to an examination of the record in this case on the assignment of errors the motion to dismiss the appeal must be determined.

This motion is based upon alleged failures to comply with the rules of this court as to filing printed copies of the record, and the briefs.   An examination of the printed record filed and the index thereto and the briefs shows a very satisfactory and substantial compliance with our rules, and hence, the motion is overruled.

Another proceeding by certiorari has also been injected into the case, challenging the integrity of the bill of exceptions.   We have examined the original bill filed with the clerk, together with the certificate of Judge Fort and the affidavit of Mr. Barron, showing that this bill was necessarily placed in the hands of the printers in order to have the record printed, and that in this way the bill was soiled, but we fail to find any unauthorized mutilation of the record, and we further find that the official copy of the stenographic notes was lost without the fault of defendant and thereupon the carbon copy was used and it was necessary to correct it before it was signed by the judge. We see no occasion for reflecting upon the integrity of counsel or any one connected with the case, and find the charges unsupported.

II.   The action is for damages resulting from personal injuries.

The petition, omitting formal parts, is as follows:

"Plaintiff further states, that he was in the employ of the defendant, the McLeod Lumber Company, from June until the ninth day of July, 1897, and that his duties while in such employ were to roll logs from the log cars on the mill railroad on to the log deck, convenient for the sawyer; that on the ninth day of July, 1897, while working at his place of

duty, he was compelled a greater portion of the time, on account of the nature of the work, to keep his back toward the log carriage, and give his attention elsewhere than to the log carriage; and that he took this position at the direction of the foreman and vice-principal of the defendant herein, relying on the better position of said foreman and vice-principal for observation, and believing with reason that he would be safe from danger in so doing. Plaintiff further states that on account of the carelessness, fault, negligence, want of care and observation on the part of the foreman, namely, the head sawyer, who in placing a log on the carriage by the use of a mechanical contrivance, designated as a 'nigger,' allowed and caused another log, that was lying on the log deck, to roll over toward the log carriage, so that the end of the log projected in the way of the carriage on its way from the saw, and by reason of the projection of the end of said log as aforesaid, said log was struck by the log carriage on its return from the saw, and thrown and hurled violently against the leg and foot of the plaintiff, mashing and mangling said limb in such manner as to require amputation; from which said injury plaintiff suffered great physical pain and mental anguish, and still continues to suffer great physical pain and mental anguish. Plaintiff states that the injury aforesaid was not occasioned by any want of care on the part of the plaintiff herein, but, on the contrary, plaintiff was not aware of his danger until he was injured; that he received no warning from the foreman or other persons of his impending danger, and that the plaintiff was using due care and caution in the discharge of his duties. Plaintiff states that he was confined to his bed for two months, and has expended much money for medical attention and care, and will be compelled to expend money for medical treatment, attention and care hereafter, and the said plaintiff is now a cripple for life, and his ability to earn wages and make a support has been greatly impaired and destroyed; by reason of which loss of ability to earn money and support,

his mental anguish and physical pain and suffering, he is damaged in the sum of thirty thousand dollars, for which he asks judgment and for costs of suit."

The answer admitted that plaintiff was employed to roll logs from tramcars on the mill railroad, to its log platform or deck convenient to its sawyer, but denied every other allegation of the petition and set up as a defense to the action his familiarity with the appliances and work and his want of ordinary care which directly contributed to his injury.

The reply denied plaintiff had been guilty of any negligence contributing to his injury.

Under the instructions of the court and the evidence, the jury returned a verdict for plaintiff for $5,000 damages. Defendant in due time moved for a new trial which was denied, and it perfected its appeal to this court.

The facts developed are quite simple. Thomas Hawk, the plaintiff, was at the time of receiving the injuries of which he complains, a deck-hand in the defendant's sawmill at Neeleyville, Butler county, Missouri. He was hurt whilst at work, by having a log suddenly and violently shoved along a platform on which he was standing, strike his foot, badly crushing it. The sawmill was a double one, with a railroad track running through the center of the same, and on each side of the railroad track was a platform, upon which the logs that were brought into the mill on flat cars, were unloaded. They were dumped on the platform by means of a "bull" chain and wheel, and then rolled across the deck or platform on skids, a distance of about twelve feet, and from there, by means of canthooks, or when necessary, by a mechanical contrivance called a "nigger," which was operated by steam by the man who had charge of the saw, they were lifted on to the log carriage when it was carried to the saw and cut into boards.

The crew who did this work consisted of the sawyer, who operated the saw, the log carriage and the "nigger" by steam; two *carriage men*, who worked on the carriage and set the

logs as desired by the sawyer; a *deck-hand*, who unloaded the logs from the mill railroad on to the deck or platform and moved them across the platform to the place where the carriagemen could handle them; and *an off-bearer*, who removed the boards from the saw. Over all these men was a foreman, who superintended this crew and mill, and the premises generally, and hired and discharged all employees. As already said, plaintiff was the *deck-hand* in this crew or gang, and was an experienced hand at this work.

No complaint is made in the petition of unsuitable or defective appliances or of the competency of the other operatives employed by defendant about this mill. Plaintiff's claim is that he was injured by the carelessness and negligence of Ed Whalen, the sawyer, in allowing one end of a log to roll over in the way of the saw carriage when he placed another log on the saw carriage by use of the steam "nigger;" that the jamming and jarring of the "nigger" as handled by Whalen, the sawyer, displaced the log and that the saw carriage as it returned from the saw with great speed struck the end of the misplaced log and hurled it against plaintiff, crushing his foot.

Plaintiff's insistence is that Whalen stood in the relation of vice-principal of defendant to plaintiff, whereas defendant insists that Whalen was a fellow-servant of plaintiff for whose negligence, if negligent, defendant was and is not liable.

When a dispute arises as to whether parties are fellow-servants, the court in each case must have the facts in order to solve the question.

Plaintiff says the sawyer, Whalen, had charge of and directed the gang and if they did not suit him could have them discharged, and, therefore, he was a vice-principal.

Plaintiff testified that he was employed by Jesse Price. "Price hired him and put him to work. Price was the foreman of that mill. He runs around and bosses the men and finds them jobs." After detailing the duties of each man as specified in the statement of this case, plaintiff says: "It was

the sawyer's business to operate the carriage and control the dimensions of the piece that was to be sawed, and my duty to keep the logs convenient to put on the carriage. Price did the hiring of the men, gave a man his time, and bossed around there. We were all engaged in manufacturing the logs into lumber."

"Q. If you did not like the way Whalen was performing his part you could complain to the foreman? A. Well, I suppose that a man could, but it would have done no good. You would have got fired, sure.

"Q. It was well known that Whalen was a skillful man was it? A. Yes, sir. If he wanted you fired it would be very easy for him to have done it. He would ask the foreman for another man and he would put him there. Whalen would go to Price and make complaint and Price would take his word for it."

However great has been the difficulty of satisfactorily determining at all times whether the employment was a common service, and the employees fellow-servants, it seems that according to all the rules announced by the various courts, the sawyer, Whalen, and the deck-hand, the plaintiff in this case, were unquestionably fellow-servants of a common master and engaged in and about a common work. Moreover, they had one common boss, Mr. Price, who employed and discharged and assigned them to their respective jobs. The argument of plaintiff's counsel that because Whalen could in all probability get Price to discharge a man he did not like, not only does not establish that he was a vice-principal for their common master, but strengthens the contention of defendant that they were fellow-servants and neither had any control of the other, but must complain to Price if either neglected his duty, who alone could discharge either. In Relyea v. Railroad Company, 112 Mo. 86, it was distinctly ruled that they are fellow-servants who are so related and associated in their work that they can observe and influence each other's conduct and report delin-

quencies to a common correcting power. [Schaub v. Railroad, 106 Mo. 74; Ryan v. McCully, 123 Mo. 636; Card v. Eddy, 129 Mo. 510; Parker v. Railroad, 109 Mo. 362.]

Cases might be multiplied confirming this same statement of the law, but it must now be held to be settled in this court.

Being fellow-servants the master is not liable for the injuries caused by the negligence of one to the other. When several persons are thus employed there is necessarily incident to the service of each, the risk that the others may fail in that care and vigilance which are necessary to his safety. [Ross v. Railroad, 112 U. S. 377; Schaub v. R. R., 106 Mo. 74.]

And in such a case it makes no difference in the application of the law that the employee receiving the injury is inferior in grade to the one whose negligence caused the injury, and this is the full extent of the proof of the relation that Whalen bore to plaintiff. While the sawyer might be deemed superior to the deck-hand, the proof is absolutely conclusive that the act of negligence of which plaintiff complains was the act of a co-servant in his character as such, and not his act representing his master in doing his master's duty.

It is unnecessary to go at length into the doctrine that if fellow-servants, as we have found they were, the defendant, the master, is not liable to plaintiff for the injury resulting to plaintiff from the negligence of Whalen, the sawyer. This rule has never been denied in this State when once that relation was established. [Parker v. Railroad, 109 Mo. 378, and cases there cited; Klochinski v. Lumber Co., 93 Wis. 417.]

At the close of all the evidence, the defendant prayed the court to instruct the jury that under the pleadings and the evidence plaintiff could not recover and their verdict must be for the defendant, which the court refused and defendant duly excepted. In this the court erred. Not only did the plaintiff's own evidence establish that he and Whalen were fellow-servants of a common master engaged in a common employ-

Vol 166 mo—9

ment and in such close relation that each could observe the other's conduct and report any neglect of the other, but the defendant's evidence fully confirmed that such was the fact and this being so, it is clear that taking the most favorable view of the evidence for the plaintiff, it did not authorize the finding of the jury that plaintiff's unfortunate injury resulted from the negligence of defendant and it is not liable therefor. The instructions for the plaintiff, which permitted the jury to find Whalen was the vice-principal of defendant, were unauthorized by the evidence and were erroneous, but the court should have directed a verdict for defendant, and for that error the judgment must be reversed, and as it is plain that no amendment can cure the case, the cause will not be remanded for a new trial. All concur.