# RIGSBY, Appellant, v. OIL WELL SUPPLY COMPANY, Respondent.

### St. Louis Court of Appeals, December 12, 1905.

### Opinion by Nortoni, J.

1. **MASTER AND SERVANT: Assumption of Risk: Pleading: Appellate Practice.** In an action by a servant against his employer for injuries caused by being put to work in an unsafe place, the appellate court will not entertain a defense that the risk was assumed where the answer did not plead such defense.

2. ———: ———: ———: **Waiver.** But where both parties in the trial court conducted the case on the theory that the question of assumption of risk was in issue, the appellate court will review the question although it was not pleaded.

3. ———: **Safe Place to Work: Knowledge of Danger.** A servant upon entering the employment of his master impliedly assumes, by his contract of hire, such risks as are ordinarily incident to the employment, and, in addition, if he enters or continues in the service, laboring without complaint in an unsafe or dangerous place, he assumes the risk from such dangerous place, provided he knew that it was unsafe.

4. ———: ———: ———. Where lumber was sawed and piled in stacks five or six feet high and moved on skids a short distance to another machine for further manufacture, the risk of such stacks of lumber falling was not one ordinarily incident to the employment of a laborer working about them; the falling of such pile of lumber could come about only through some negligence in constructing it.

5. ———: ———: ———: **Continuing in Service After Knowledge.** Where lumber was taken from the saw and stacked in piles five or six feet high upon skids, and moved a short distance to another machine for further manufacture and a laborer, who was put to work about such piles of lumber and continued in that

Rigsby v. Oil Well Supply Co.

employment for a few months, saw a pile of lumber at one time start to fall, and where it was shown that for twenty years such piles of lumber had fallen frequently, but without hurting any one, it was a question for the jury whether the laborer knew and assented to the danger so as to justify the conclusion that by remaining in the service he assumed the risk of an injury which he received by the falling of such a pile of lumber.

6. ———: ———: **Negligence of Master.**    The servant assumes risks arising from his master's negligence where the place in which he is put to work becomes unsafe while he is in the service, through the negligence of the master, and he continues in the employment with full knowledge of the danger.

7. ———: **Negligence: Fellow-Servant: Dual Capacity.** Where one employee has superintending control over another as to certain duties, but is engaged in the same kind of work, he occupies the dual position of vice-principal and fellow-servant and the master is liable for injuries caused to his fellow-servant by his negligence in discharging the duties of vice-principal but not by his negligent acts while performing the duties of fellow-servant.

8. ———: ———: ———: ———: ———. Where one acting in the dual capacity of vice-principal and fellow-servant to another by his negligent act as a fellow-servant makes the place unsafe, and then in his capacity as vice-principal orders the other into the unsafe place whereby he is injured, the master is liable for the injuries.

9. ———: ———: ———: **Concurring Negligence of Master and Fellow-Servant.** Where a servant is injured by the negligence of the master combined with that of the fellow-servant and the negligence of neither alone would have produced the injury, the master is liable.

10. ———: **Assumption of Risk.** The rule that a servant assumes the risks incident to his employment in an unsafe place, where the danger is temporary only and arises from the hazardous nature of the work itself, does not apply to the toppling and falling of a pile of lumber in a factory where it is being worked up.

11. ———: ———: **Contributory Negligence:**   Where a laborer working about piles of plank in a factory was ordered by his foreman to a place where a pile of planks fell upon him and injured him, he was not guilty of contributory negligence in obeying the order although he knew his employer was negligent in piling the planks, unless the piles were so constructed as to threaten immediate injury.

#### Concurring Opinion by Goode, J.

12. **MASTER AND SERVANT: Assumption of Risk: Continuing in the Employment.**  If a servant engages to work with an obviously dangerous implement or if in the course of his employment, the implement becomes obviously dangerous and he continues to use it without complaint, he is held to have assumed the risk of injury by its use; because by consenting to use an implement he knows to be dangerous, he relieves the master of the duty to furnish a safe one, and because his master must depend upon him as his main source of information concerning the condition of the implement.

Appeal from Butler Circuit Court.—*Hon. James L. Fort*, Judge.

REVERSED AND REMANDED.

*David W. Hill* for appellant.

(1)  The obligation of the master towards its servants required it to furnish suitable tools and appliances and a reasonably safe place for the doing of the work demanded of its servants.  Herdler v. Buck's Stove and Range Co., 136 Mo. 3; Doyle v. Missouri, Kansas & Texas Trust Co., 140 Mo. 1; Rogers v. Meyerson Printing Co., 103 Mo. App. 683; Reichla v. Gruensfelder, 52 Mo. App. 43; Turner v. Haar, 114 Mo. 335.  The duty of seeing that the place, tools and appliances are such that the servant can perform his duties with reasonable safety is a personal one, which the master cannot dele-

gate to a servant or any other person and thereby escape liability on its part. Rodney v. Railroad, 127 Mo. 676; Jones v. St. Louis, Naples and Peoria Packet Co., 43 Mo. App. 398; Zellars v. Missouri Water and Light Co., 92 Mo. App. 107; Steube v. Christopher & Simpson Architectural Iron and Foundry Co., 85 Mo. App. 640. (2) If the lumber had been properly stacked, no injury would have occurred; in other words, a stack of lumber not carelessly and not negligently built up, is not inherently dangerous and is not liable to fall on any one, therefore the doctrine of the assumption of risk does not obtain here for the servant never assumes the negligence of the master. Harris v. Williams Cooperage Co., 107 Mo. App. 249, 80 S. W. 924; Curtis v. McNair, 173 Mo. 270; Cothron v. The Cudahy Packing Co., 98 Mo. App. 343. (3) Dallas Austin acted as foreman in the presence of the master, directed the servants about what they should do, when and how they should do it, and therefore was not a fellow-servant of the appellant. Kelley v. Stewart, 93 Mo. App. 47; Foster v. Railroad, 115 Mo. 165; Miller v. Railroad, 109 Mo. 350; Brothers v. Cartter, 52 Mo. 372; Whalen v. Centenary Church, 62 Mo. 326; Stoddard v. Railroad, 65 Mo. 514; Lydon v. Manion, 3 Mo. App. 602; Gormly v. Vulcan Iron Works, 61 Mo. 492; Hutson v. Railroad, 50 Mo. App. 300; Dutzi v. Geisel, 23 Mo. App. 676; Hall v. St. Joseph Water Co., 48 Mo. App. 356. A foreman cannot divest himself of his responsibility by doing common work with those under him, and thereby enable his employer to escape liability for personal injuries occasioned by his negligence. Haworth v. Railroad, 94 Mo. App. 215; Hunt v. Desloge Consolidated Lead Co., 104 Mo. App. 377; Browning v. Kasten, 80 S. W. 354, 107 Mo. App. 59. (4) If appellant had even known of the dangerous condition of the stack of lumber, his mere knowledge of the

danger in working around the stack of lumber would not defeat his action, unless the danger was so glaring as to threaten immediate danger, or unless it was unreasonable to suppose he could safely perform the work required by the exercise of ordinary care. Hurst v. Railroad, 163 Mo. 309; Hamman v. Central Coal & Coke Co., 156 Mo. 232; Shortel v. The City of St. Joseph, 104 Mo. 114; Mahaney v. Railroad, 108 Mo. 191; Hamilton v. The Rich Hill Coal Mining Co., 108 Mo. 364; Hughes v. Fagin, 46 Mo. App. 37. (5) The questions of whether the master exercised ordinary care in furnishing a reasonably safe place within which to work, suitable tools and appliances, and whether plaintiff was guilty of contributory negligence, were questions for the jury. Fisher v. Central Lead Co., 156 Mo. 479. When the foreman ordered plaintiff to go help lift the plank, the plaintiff had the right to assume that the foreman would not send him into a dangerous place. (6) Even if Dallas Austin had been a fellow-servant with the plaintiff, then plaintiff was injured by the joint negligence of the master and the fellow-servant, and the master is still liable as it is a fact that the master was negligent in permitting the lumber to be stacked in such a manner, and Dallas Austin was negligent in shaking the stack of lumber and in not warning the servant of the danger. Irmer v. St. Louis Brewing Co., 69 Mo. App. 17; Browning v. Railroad, 124 Mo. 55.

*William N. Barron* for respondent.

(1) The servant assumes all risk of danger incident to the work he engages to perform, and if he is injured as a result of that which was to be expected in the usual course of such work, the master is not liable. Plaintiff proved that the pile of plank that fell was stacked in the usual and customary way, and that almost daily, for three months, similar piles had, in the presence and full view of plaintiff, fallen. If the falling

of the plank was, without fault of master or servant, a danger incident to the prosecution of the business, then the plaintiff assumed all risk of injury from falling plank. Fugler v. Bothe, 117 Mo. 495; Epperson v. Postal Tel. Co., 155 Mo. 373; Curtis v. McNair, 173 Mo. 1. c. 279. (2) If the danger results from negligence of the master, which is either known to, or, by the exercise of the ordinary powers of observation, might be discovered by, the servant, who, nevertheless, by remaining in the dangerous employment, continues to run the risk of injury from such negligence of the master, then such servant is guilty of contributory negligence and cannot recover. Whittaker's Smith Negligence, pp. 130-133; Steinhauser v. Spraul, 127 Mo. 541; Lucey v. Hannibal Oil Co., 129 Mo. 39; Wray v. E. L. & W. P. Co., 68 Mo. App. 387; Marshall v. Hay Press Co., 69 Mo. App. 261; Holloran v Iron & Foundry Co., 133 Mo. 470; Roberts v. Mo. & Kans. Telephone Co., 166 Mo. 378. If the risk is such as to be perfectly obvious to the sense of any man, whether servant or master, then the servant assumes the risk. (3) The lumber stacks were piled on the skids by the men who worked at the saw and were carried across the skids by those men, assisted by the men who worked on the edger, of whom plaintiff was one. Each was in full view of every other, and all were engaged in a common pursuit, viz., converting hickory logs into sucker rods, and all were so related and associated in their work that they could observe and have an influence over each other's conduct, and report delinquencies to the common directing authority. Those who piled and carried the lumber across the skids, whose negligence plaintiff contends caused the injury, were, therefore, fellow-servants of plaintiff and for their negligence he cannot recover of the common employer. Marshall v. Schricker, 63 Mo. 308; Miller v. Railroad, 109 Mo. 356; Relyea v. Railroad, 112 Mo. 1. c. 93; Carl v. Eddy, 129 Mo. 514; McCarty v. Rood Hotel Co., 144 Mo. 397; Hawk v. McLeod Lbr. Co., 166 Mo.

128-9; Stocks v. St. Louis Transit Co., 105 Mo. App. 595, 79 S. W. 1176. (4) The circumstance that the negligent servant and the injured servant are under different foremen does not change the rule. If the act of negligence of which the plaintiff complains is the act of a co-servant in his character as such, and not his act representing the master in doing the master's duty, the latter is not liable. Hawk v. McLeod Lbr. Co., supra; Grattis v. Railroad, supra; Fogarty v. St. Louis Transit Co., 105 Mo. App. 1, 79 S. W. 664.

STATEMENT.—The business of defendant (a corporation) is converting hickory and ash sawlogs into pump rods, called "sucker rods," for deep wells. The logs used are from eighteen to thirty-two feet long. The first process in the manufacture of the rods is to saw the logs into planks from one and one-half to one and three-quarters inches in thickness. The second process is to run the planks through, what is termed, "an edger," that cuts the planks into strips one and one-half or one and three-quarters inches square. The strips are then run through a finishing machine and are ready for use. The saw, edger and finishing machine are all on the same floor of the mill. Skids are laid parallel to each other and extend from the saw carriage over to the table of the edger. These skids are smooth and are kept lubricated. The planks, as they come from the saw, are piled one upon another on these skids and when a pile reaches a height of four or five feet, it is slid or shoved to the edger by the use of handspikes, being held in place by canthooks. The planks vary in width, the first one from a log being naturally narrower than the one taken from the center, and the logs also vary in diameter. The off-bearers at the saw and the workers at the edger are required to shove the piles of planks from the saw to the edger. The room in which these machines are located is twenty-five by thirty feet and the machines and piles of planks are all in plain view from any part of the room.

The plaintiff commenced work at the mill in October, 1902. He worked for about two months at the finishing machine, bearing off the rods as they were finished. Plaintiff was then put to work at the edger, where he continued to work until January 24, 1903, on which day a pile of planks that had been shoved over to the edger, fell upon him and broke his leg. The suit is to recover for this injury. The negligence alleged is that the pile of planks that fell upon plaintiff was negligently piled and that plaintiff failed to furnish him a safe place to work and that, "while this plaintiff, as a common laborer, was in the line of his duty in the employ of defendant at defendant's said factory, defendant's foreman having direction and control of plaintiff, carelessly and negligently directed, ordered and required plaintiff to go near said stack of lumber to assist in lifting a large plank that was lying with one end on the table of the large edger saw and the other end on or near the floor of said factory; that while plaintiff was stooped to take hold of said plank, one of said unbraced, insecure and dangerous stacks of lumber, about six feet high, so carelessly and negligently stacked as aforesaid, suddenly and violently fell down against, upon and across the body and legs of the plaintiff, thereby and thus breaking his leg," etc.

The answer was a general denial and a plea of contributory negligence.

At the close of all the evidence, the court instructed the jury that plaintiff could not recover, and the verdict, therefore, was for the defendant. Plaintiff appealed.

The evidence shows that W. E. Maddox was the foreman of all of the men at work on the floor of the mill where plaintiff was at work when injured, and that the planks were piled on the skids under his view and direction and in the way he had instructed the men to pile them. The evidence also shows that Austin had charge of the edger, put the planks through the machine

and that his helpers (to lift planks from the piles to the edger table and to bear off the rods as they were sawed) were instructed by Maddox to obey Austin's directions, though Austin himself was under the control of Maddox. Plaintiff was an off-bearer of rods from the edger but whenever called upon by Austin, would help lift planks on to the edger table and help slide piles of planks from the saw over to the edger. Plaintiff testified that on the day he was injured, upon the order of Austin, he went to the far end of a plank to help lift it to the edger table and just as he stooped over to take hold of the plank, a pile of planks fell over on him, knocking him down and breaking his leg; that he had nothing whatever to do with the stacking of the planks and it was not a part of his duty to help stack them; that during all the time he was at work in the mill, the piles of planks could have been seen by him; that he was not over twenty feet from them and there was nothing to obstruct his view but he had never seen one of them fall, but had seen one topple and start to fall over against one of the men who held it until he and the man had pushed it back in place.

The evidence shows that there were no standards or other devices provided to keep the piles of planks from falling, and the defendant's evidence shows that the use of a fence or standards would be impracticable as they would be in the way and make the labor more difficult in removing the planks from the piles on to the edger table.

Dover, one of plaintiff's witnesses, testified that the piles of planks frequently fell as often as twice a day, but sometimes they would not fall for a week or more. Defendant's witness Rice testified that he and Austin had raised one end of the plank onto the edger table and that the other end became entangled with a pile of planks just to the rear of the one that fell upon plain-

tiff, and Austin took a handspike and pried at the plank to remove it and thought he had removed it from the pile, but he had not, and when he and Austin took hold to lift it up it tottered the pile of planks behind the one that fell upon plaintiff; that he saw it was going to topple over and fall against the pile in front and hurried out of the way; that plaintiff started to go backwards and fell and the rear pile of planks fell over against the pile in front and knocked it over on plaintiff and thereby fractured his limb. Austin testified to the same state of facts, and also said that he hallooed to plaintiff to get out of the way, that the pile of planks was going to fall; that plaintiff's reply was: "Let her fall and be damned." Both plaintiff and Rice testified that they heard no warning from Austin that the planks were about to fall. Plaintiff further testified that when he was called by Austin to help raise the plank on the table, he went over there in a hurry for the reason that Austin had told him a day or two before that he was too slow and if he did not hurry he would have him "fired," and in his hurry, he paid no particular attention to the pile of planks, in fact, did not notice it until after it fell upon him.

All of defendant's witnesses testified, including Maddox, that the piles of planks were built up to a height of from four to five feet, never six feet, and would sometimes fall over as often as two or three times a day and then again they would not fall perhaps for a week, and Maddox testified that he had been doing the same kind of work and having planks piled in the same way for twenty-one years and that plaintiff was the only one he had ever known to be injured by their falling; that the men in the mill knew that the piles of planks were liable to fall at any time and kept watch and when they saw a pile was about to fall they would get out of the way, and as the pile toppled before it fell, they had plenty of time to get out of the way and avoid injury.

NORTONI, J. (after stating the facts).—The question with which we are called upon to deal, is, did the trial court err in peremptorily directing a verdict for defendant at the close of all the evidence? We are inclined to the opinion that the facts developed made a proper case for the jury.

1. In support of the action of the court below, respondent advances, first, the argument that appellant assumed the risk and that he is therefore precluded from recovery. This defense is not pleaded in the answer and would not be open for review here were it not for the fact that on the trial, evidence tending to prove that appellant assumed the risk was not objected to by him and in fact, he offered evidence in chief to the effect that he did not assume the risk by testifying that he was unaware of taking any risk from the piles of planks falling on him. The trial of the cause in the court below having been conducted by both parties on this theory, it is our duty, in justice to the trial court, to review it here on the same theory, to the end that nothing more nor less than the cause as tried below, shall be reviewed on appeal. [Epperson v. Postal Tel. Co., 155 Mo. 370-371, 50 S. W. 795, 55 S. W. 1050.]

2. To deal, then, with the question of assuming the risk, it is proper to state the rule in that behalf, as we understand it. It is this: The servant, upon entering the service of the master, impliedly assumes by his contract of hire, for the same compensation, the hazards which result from such risks as are ordinarily incident to the employment in which he engages, and in addition to these risks, ordinarily incident, etc., he also either by entering or continuing in the service and using, without complaint, defective machinery or appliances, or without complaint, continuing to labor in an unsafe or dangerous place, assumes the risks of such defective machinery or appliances or unsafe or dangerous place, provided he knew not only that the machinery or appliances were defective or the place unsafe, but also knew

and understood and appreciated the dangers which were liable to result therefrom, and that he understood and appreciated the dangers must be made to appear, first, by either positive evidence to that effect, or else, second, the danger as well as the defect must have been obvious. [Lee v. Ry. Co., 112 Mo. App. 372, 87 S. W. 12-18; Ziegemeyer v. Goets L. & C. Co., 113 Mo. App. 330, 88 S. W. 142; Epperson v. Postal Tel. Co., 155 Mo. 372, 50 S. W. 795, 55 S. W. 1050.] This being the settled rule on the subject, the inquiry is, does the evidence in this case so conclusively show, that it became a matter of law for the court, that the injury which befell the appellant was either, first, a hazard ordinarily incident to the employment at the mill? or, second, is it shown conclusively on the whole record so that it becomes a matter of law for the court, that the appliances furnished with which to perform the labor assigned to him, or the place in which he was required to labor, were both defective and unsafe and that he knew of such unsafety and understood and appreciated the danger likely to overtake him therefrom? or was the danger therefrom obvious to anyone, either servant or master? We do not understand the risk of the stack of lumber falling to be one ordinarily incident to the employment. It seems to us that there are several reasons which militate against this proposition. First, it is not an inherent trait of a stack of sawed lumber five or six feet high, to topple over and fall, even when aided, as in this case, by the entangled plank and the slight jar therefrom. Such occurence, in the nature of things, could come about only through some negligence in constructing the pile. One of the absolute duties of the master is to furnish the servant a reasonably safe place in which to perform his labor; in a relative sense, as safe as is consistent with the labor he is engaged in performing: that is, the law requires the master to furnish his servant a suitable place in which to do his work, where, by the exercise of ordinary care on the part of the servant, he may perform his labor

with safety, or subject only to such hazards as are necessarily incident to the employment. [Zeigemeyer v. Goetz L. & C. Co., 113 Mo. App. 330, 88 S. W. 141; Bradley v. Ry. Co., 138 Mo. 293, 39 S. W. 763; Sullivan v. India Mfg. Co., 113 Mass. 296.] And in this connection, we must remember that the mere furnishing of the safe place and safe appliances as above mentioned, are not sufficient, for this positive duty of the master is a continuing one and the obligation is ever present, requiring the master to continue the place and appliances safe as above indicated and in the discharge of this duty, the master is required to exercise ordinary care and circumspection in order to discover hidden and latent dangers. It is true that such dangers and defects which are undiscoverable by the master by the exercise of ordinary care on his part to that end, are assumed by the servant. The servant is not required, however, to seek out hidden and latent dangers which are possible of discovery by ordinary care, for this is the master's duty, and the servant has the right to assume and rely upon the assumption that the master has performed this duty, personal to himself. But inasmuch as the lumber was sawed and piled by others than the appellant, under the direction of the superintendent, he assumed, then only such risks of injury as lay hidden and concealed in the pile of planks which were undiscoverable by ordinary care on the master's part, and this defect in the pile of planks is certainly not one of that class. The evidence shows conclusively that it was constructed of planks of different lengths, varying from eighteen to thirty-two feet and loosely laid one upon another, some of which were narrow and others wide, and in all, five or six feet in height. The liability of its toppling over and falling, under the circumstances detailed in evidence, was patent to the master, on whom the obligation of its discovery rested, by exercising ordinary care in that behalf. We therefore hold that appellant did not assume the risk as one ordinarily incident to the employment.

3. We come now to consider, did he assume the risk by continuing in the service, knowing the liability of these piles of planks as so constructed, to topple over and fall, thus rendering his place of labor unsafe to the extent that its dangers were appreciated and understood by him or were such dangers obvious? Appellant himself testified that he had never seen one of these piles topple over, save once, and on that occasion it did not fall. Respondent's superintendent testified that in his services for twenty-one years, while the falling of the piles was frequent, no one was ever injured thereby prior to the appellant's injury. We are of the opinion, therefore, that on this evidence appellant is not precluded from a recovery as a matter of law as having assumed the risk by virtue of the maxim, *volenti non fit injuria*, for the following two very sufficient reasons: First, where the assumption of the risk is cast upon the servant by virtue of the doctrine of knowledge of and assent to danger, resting upon the maxim aforesaid, the evidence must be positive to the effect that the servant uncomplainingly remained in the service with full knowledge of the risk incurred and further, that he understood and appreciated the consequent dangers. In the state of the record disclosing that the appellant had not seen the pile fall over except as above indicated, and no one in twenty-one years past, nor prior to that time, so far as the record shows, had been injured by such fall, we certainly cannot hold it to appear as a matter of law that appellant appreciated and understood the danger, even though he had known the piles thus constructed were liable to fall. For in the doctrine of assumption of the risk under this head, the law is abundantly settled by the adjudicated cases to the effect that it is in a case of patent and obvious dangers alone that the law will charge the servant with knowledge, or in other words, the law will only presume that the servant knew of such dangers as were obvious from a given defect and necessarily sequent therefrom. [Lee v. Railway Co., 112 Mo.

App. 372, 87 S. W. 18.] Or as the principle is aptly stated by the United States Circuit Court of Appeals: "To justify the presumption of knowledge, the defect must be obvious and its dangers equally plain to one and all attentive." [Valley Ry. Co. v. Keegan, 87 Fed. 849, 31 C. C. A. 261.] Or in the language of Judge ROM-BAUER, in his dissenting opinion delivered while a member of this court in Fugler v. Bothe, and adopted by the Supreme Court, reported 117 Mo. 501, 22 S. W. 1113; "If the risk is such as to be perfectly obvious to any man, either servant or master, then the servant assumes the risk."

We are constrained, therefore, to hold that even though appellant may have had knowledge that the stacks of planks were liable occasionally to fall, that the danger therefrom in this instance was certainly not obvious to him in the sense of the adjudications on the subject so that he was charged with constructive knowledge of such danger as a matter of law and the question of whether or not he assumed the risk, we hold, was properly for the jury.

4. While it is not essential to the decision here, it may not be out of order to briefly notice a proposition advanced by the learned counsel for appellant in his brief to the effect that in no case does the servant assume the risk of the master's negligence. We are aware that there are several cases where statements to this effect have been made, but we do not concur in that view, and it is not the doctrine of this court nor is it the doctrine of our Supreme Court on the subject, when the proposition is squarely in judgment. Nearly or about all, and possibly all of those risks which are assumed by the servant aside from those ordinarily incident, etc., upon the doctrine of knowledge of and assent to the risk, arising under that branch of the law under this head, resting upon the maxim, *volenti non fit injuria*, are risks which arise by the negligence of the master and that there may be an assumption in such case is beyond con-

troversy. For instance, it is well settled that if the appliances or the place furnished the servant is safe and secure at the initiation of the service, yet during the employment, through the negligence of the master, they are allowed to become unsafe and defective and the servant has full knowledge of the defective and unsafe condition thereof and makes no complaint, but continues in the service knowing and understanding and appreciating the danger liable to result from such unsafe and defective condition, and thus, with full knowledge, assents to this increased hazard which came into the service in consequence of the master's neglect and without complaint exposes himself thereto, he is taken to have assumed this risk also, although it arose from the master's negligence. Such risks are treated as extra hazards and the servant's assumption thereof is predicated upon the theory of his knowledge and appreciation of the dangers and voluntary assent thereto, as happily expressed in the maxim, *volenti non fit injuria,* involving the idea that he who consents cannot receive an injury.

The doctrine of our Supreme Court on this question is most clearly stated in Epperson v. Postal Tel. Co., 155 Mo. l. c. 372, a case before the court in banc, where a full half-page of authorities are cited in support of it. It is the doctrine of every jurisdiction where the common law obtains, so far as we can ascertain, and in every case where the question was squarely in judgment, has been so decided. This court recently had occasion to call attention to the doctrine in Lee v. Railway Co., 112 Mo. App. 372, 87 S. W. 12, where the authorities are accumulated and cited. The doctrine here referred to rests upon both principle and authority and is as firmly imbedded in the law as the rule that risks ordinarily incident, are assumed.

5. The evidence tends to show and does show that Mr. Maddox had general superintending control of the mill and of the men thereabout, by whatever title he may have been known, and that Mr. Austin had charge

of the edger and the several men working therewith, of which this appellant was one. It is true that both the appellant and his immediate superior, Austin, were each under the supervising control of Maddox. It was the duty of Austin to run the planks through the edger and appellant and one Rice were his helpers in off-bearing the rods cut therefrom, and otherwise when called upon, they assisted Austin to place heavy planks from the pile onto the edger table preparatory to running them through the machine. It is also established beyond controversy that when appellant was assigned to work at the edger, Maddox, the superintendent, instructed him to do what Austin told him to do and that both he and Rice were required to obey his orders in respect to the work about the edger. On this state of the evidence, in view of the fact that both appellant and his immediate superior, Austin, were under Maddox, it is contended that Austin was a fellow-servant with appellant and that, inasmuch as the pile of planks in the rear of the one which fell upon appellant, was caused to fall by Austin having gotten a plank which he was attempting to place upon the edger table, entangled therein and thus precipitated it over against the pile next in front, thereby causing it to fall and injure the appellant; that the proximate cause of appellant's injury was the negligent act of Austin in the capacity of fellow-servant to appellant, and therefore the trial court acted properly in holding that appellant could not recover.

It is unnecessary for us to attempt to define who are and who are not fellow-servants. It could serve no good purpose here to go into this much-vexed question. Suffice to say that it now stands conceded on this record that Austin occupied a dual capacity toward appellant. The dual-capacity doctrine is the law of this State. It is so firmly rooted in our jurisprudence that it is established beyond all controversy and has been so expressly decided in numerous cases. [Fogarty v. St. Louis Transfer Co., 180 Mo. 505, 79 S. W. 664;

Bane v. Irwin, 172 Mo. 307, 72 S. W. 522; Bien v. Transit Co., 108 Mo. App. 399.] Austin, then, was a vice-principal, in so far as he represented the master in discharging those duties which were personal to the master, and the fact that Maddox had general superintending control over both Austin and appellant did not render them fellow-servants. [Bane v. Irwin, 172 Mo. 317; Bien v. Transit Co., 108 Mo. App. 399, 83 S. W. 986.] It of course necessarily follows that, although the servant, who is a vice-principal as to certain of his duties and while engaged in such duties which are personal to and absolute upon the master, he is also, while engaged in the ordinary duties of the servant in so far as he thus disrobes himself of the master's duties and participates in those of a co-laborer, a fellow-servant to that extent, and his negligence, while thus acting as a fellow-servant will not charge the master with liability to a fellow-servant therefor. [Hawk v. Lumber Co., 166 Mo. 129, 65 S. W. 1022; Fogarty v. St. Louis Transfer Co., 180 Mo. 503, 79 S. W. 664; Harper v. Railway Co., 47 Mo. 580; 12 Am. and Eng. Ency. Law (2 Ed.), 949.] And hence the law is well established that it is the act from which the injury results, performed by the person occupying this dual capacity and not the rank, which is the true test of the master's liability thereunder. [Bane v. Irwin, Hawk v. Lumber Co., Fogarty v. St. Louis Transfer Co., and Bien v. Transit Co., supra.]

Succinctly stated, the argument is that Austin disrobed himself as vice-principal, and acting in the capacity of laborer and fellow-servant, proceeded in company with the witness Rice, to pick up a heavy plank, placing one end thereof on the table and in thus acting as laborer carelessly entagled the other end under a pile of lumber, from which entanglement, the planks, a moment later, were caused to fall and injure appellant, and that therefore a recovery is precluded. In meeting this proposition, we must say that this act was the negligent act of

Austin while acting in the capacity of fellow-servant, and there can be no doubt that if appellant predicated his right of recovery on this negligent act of Austin, we would be compelled to so hold and affirm the judgment. In fact, we have been much impressed with this contention and especially so, when viewed in the light of Hawk v. Lumber Company, 166 Mo. 129, 65 S. W. 1022. In that case, the act of negligence of which complaint was made and on which the right of recovery was predicated, was the negligent act of the vice-principal while acting in the capacity of co-laborer, but on careful consideration, it will be observed that that case is not in point here. The distinguishing feature is that in this case the acts of negligence alleged in the petition are the negligent stacking of the lumber and thus rendering the place unsafe and the negligence of the vice-principal in ordering the appellant into such unsafe place, thus causing his injury. The following from the petition is conclusive on the allegation of negligence: "While this plaintiff, as a common laborer, was in the line of his duty in the employ of defendant at its said factory, defendant's foreman, having direction and control of plaintiff, *carelessly and negligently directed, ordered and required the plaintiff to go near said stacks of lumber,* to assist in lifting a large plank that was lying with one end on the table of the large edger saw and the other end on or near the floor of said factory; that while he was stooped to take hold of said plank, one of said unbraced, insecure and dangerous stacks of lumber, about six feet high, so carelessly and negligently stacked as aforesaid, suddenly and violently fell down, upon and across the body and legs of plaintiff," etc. There is not a word contained in the petition relative to the act of Austin in entangling the plank in the pile. No complaint was made on that score nor does the appellant mention such fact in his testimony. It comes into the case first by the respondent's witness. The alleged negligence is the order of Austin to appellant to go into the place of danger,

precisely as in Bane v. Irwin, 172 Mo. 317, and the evidence is conclusive to the effect that Austin first took up the plank and caused it to become entangled in the pile of planks, and having thus, by his act of fellow-service, created and made a place which might have otherwise been safe, an unsafe and a dangerous place, then immediately upon creating the unsafe place, as a fellow-servant, enrobed himself with the authority of the master and carelessly ordered and directed the appellant therein to his hurt and injury. The evidence shows that appellant, acting in obedience to this order, was required to move quickly and went into the place assuming, as he had a right to assume, that the place was safe for the purpose for which the master's *alter ego* ordered him therein, for the servant has a right, under such circumstances, to assume that the master or his *alter ego* will not send him into a place of danger without assuming the risks of so doing. [Bane v. Irwin, 172 Mo. 306, 72 S. W. 522; Doyle v. M. K. & T. Trust Co., 140 Mo. 18, 41 S. W. 255; Sullivan v. Railway Co., 107 Mo. 78, 17 S. W. 748.] In Bane v. Irwin, 172 Mo. 306, 72 S. W. 522, the vice-principal, by an act of fellow-service, ignited the fuse attached to a blast and thus rendered the place, otherwise safe, an unsafe and dangerous place, and ordered the plaintiff into it. The blast exploded, and plaintiff was injured by losing both eyes. On the defense of fellow-service, the Supreme Court, speaking through GANTT, P. J., said: "The negligence in this case was the negligent order to plaintiff to return to the dangerous place and fire the remaining shot, and the injury was the consequent result of that order and not the negligent loading and tamping of the shot. While Gibbs acted in a dual capacity, the injury resulted from the order, in making which he represented the master." This case is in point and controlling here on this question. See also Chicago Hair Co. v. Mueller, 203 Ill. 558, and the very able and learned opinion of the court in banc, written by Judge MARSHALL in Fogarty v. Trans-

fer Co., 180 Mo. 490, 79 S. W. 664. In that case, Judge
MARSHALL said:

"In Chicago Hair Co. v. Mueller, 203 Ill. 558, the
foreman had been engaged in throwing down bales of
hair from a high pile, and the plaintiff had been engaged
in moving them to another place in the factory. The
foreman left the pile in an unsafe condition, and went
to another part of the factory. The foreman ordered the
plaintiff to go back and get two bales that had been
thrown down from the pile. While so doing some of the
bales fell down from the pile that had been left in an
insecure position by the foreman, and injured the plain-
tiff. A recovery was allowed to stand. This was mani-
festly upon the ground that the foreman had failed in
his duty as a vice-principal in ordering the plaintiff to
work in an unsafe place. The fact that the foreman in
his capacity of co-laborer had produced the unsafe place
is immaterial, for it was his duty as a vice-principal not
to order the plaintiff to work in an unsafe place; or
otherwise stated, to furnish the plaintiff a reasonably
safe place in which to work. The court said: 'The mere
fact that Hermes (the foreman) engaged in some labor
as a common laborer did not, as a matter of law, make
him any the less a vice-principal.' "

We are persuaded, therefore, that the learned trial
judge erred in holding that the negligent act of the fel-
low-servant was the proximate cause of the injury, inas-
much as the declaration and proof show that it was the
negligent order of the master's *alter ego* which caused
appellant to assume the position which rendered his in-
jury possible, for without the negligent order of the mas-
ter to assume the position of danger created by the
fellow-servant, no injury could have befallen the appel-
lant. The negligent order given by Austin in his capac-
ity as vice-principal in discharging a duty absolute and
personal to the master, was the proximate cause of the
injury.

6. There is an additional reason, however, why we

think liability might attach to the master in this case even though the act of Austin as fellow-servant contributed to cause the lumber to fall, and that is, it is well-settled law that when the negligence of the master is combined with that of the fellow-servant in producing the injury, and the negligence of neither alone is the efficient cause, both the master and fellow-servant are liable and the injured servant may maintain his action against either or both, on account of such injury. [Browning v. Railway Co., 124 Mo. 55, 27 S. W. 644; Young v. Shickle, H. & H. Co., 103 Mo. 324, 15 S. W. 771; Irmer v. Brewing Co., 69 Mo. App. 17; 12 Am. and Eng. Ency. Law (2 Ed.), 905.] The manner of piling these heavy planks, long and short, wide and narrow, to such a height on skids without any kind of precaution to prevent their falling, was certainly evidence of negligence on that score to go to the jury, yet they might not have been overturned in this instance except for the act of the fellow-servant, Austin, in entangling the large plank thereunder. Thus we have three negligent acts; the one, that of the master, performed under the direction and supervision of Maddox, the superintendent, in stacking the lumber; and, second, the negligent order of Austin in his capacity of vice-principal to appellant to go into the dangerous place, both acts of negligence on the master's part; and, third, that of Austin in his capacity of fellow-servant in causing the lumber to fall, and these three acts combined and concurred to the appellant's hurt, and on this theory, we are persuaded the appellant would be entitled to go to the jury as well as on the theory heretofore mentioned.

7. The learned counsel for respondent argues, however, that the doctrine of safe place is not applicable to this case and therefore the negligent order of the vice-principal to appellant to go into an unsafe place could not authorize a recovery on that account as there was no obligation on the master to furnish a safe place. It is true that the general rule of safe place is not pertinent

to every case and that it has one well-defined exception and there sometimes arises a state of facts for adjudication where the principle has no forceful application. The exception, as we view it, rests upon the reason and the inherent justice of the law which never requires or commands the doing of an impossible thing, and is that the master is exempt from furnishing a servant a safe place in which to work when the danger is temporary only and arises from the hazardous nature and the progress of the work itself and is known to the servant. The doctrine has special application to that class of cases in which the servant is employed to make a safe place unsafe, as for instance, undermining an embankment, where from the very nature of the work, there is a constant menace of danger and the injury results from a risk essentially incident to such employment, for in such a case, where the prosecution of the work itself renders the place unsafe, it would be out of the question to require the master to maintain it a safe place. It has also been applied to the case of buildings, where under the peculiar state of facts, the progress of the work itself rendered the place otherwise safe, to be unsafe. In such case, no recovery can be had by the servant if the master has taken such reasonable precautions to prevent injury as are consistent with the nature of the work. The doctrine, it will be seen, amounts to the same as to the doctrine of risks ordinarily incident to the employment being assumed by the servant. It is abundantly supported by authorities, however, under the head of an exception to the rule of safe place. [Bradley v. Ry. Co., 138 Mo. 302, 39 S. W. 763; Armour v. Hahn, 111 U. S. 313; Davis v. Mining Co., 117 Fed. 122; Brown v. King, 100 Fed. 561; 40 C. C. A. 545; 20 Am. and Eng. Ency. Law (2 Ed.), 57.] And in Ziegemeyer v. Goetz Lime & Cement Co., the authorities on the subject are collected and cited.

We are of the opinion that the case at bar does not fall within the exception stated. The principle of safe

place, with its necessary limitations, that is, in a relative sense, is applicable here, for it was the absolute duty of the master to furnish appellant with a place in which to perform his labor, as reasonably safe as the nature of the employment permitted, and in default of this and any consequent hurt to appellant from such negligence other than that of fellow-servants and risks assumed, while the appellant was exercising ordinary care on his part, would entitle him to recover.

The mere knowledge of appellant that respondent was negligent in piling the planks and that they were liable to fall, would not preclude his right of recovery on the theory of contributory negligence unless the piles thus constructed were so dangerous as to threaten immediate injury, for if the situation was such that he might have reasonably supposed that he could work about it by the exercise of ordinary care and caution, he had the right to continue in the service without becoming charged as a matter of law with contributory negligence. The negligence on the part of the servant in such case does not necessarily arise from his knowledge of the defect, but is a question of fact to be determined from such knowledge and other circumstances in evidence. This, too, was a question for the jury. [Mathias v. Stock Yards Co., 185 Mo. 434, 84 S. W. 70; Hamilton v. Coal Co., 108 Mo. 275; Hahn v. Railway Co., 92 Mo. 440, 4 S. W. 937; Stoddard v. Railway Co., 65 Mo. 514; Lee v. Railway Co., 112 Mo. App. 372, 87 S. W. 23.]

We are inclined to the opinion that the learned trial judge erred in declining to submit the issues to the jury and the judgment is therefore reversed and the cause remanded to be proceeded with as herein indicated. *Bland, P. J.,* concurs; *Goode, J.,* holds that what has been said herein, in dealing with the question of assumed risk, is sound in principle, but is of opinion that it is more or less in conflict with certain views expressed in the late case of Blundell v. Miller Elevator

Co., 189 Mo. 552, 88 S. W. 103, and therefore desires to be marked as concurring in the result only, and files a separate opinion.

GOODE, J. (concurring).—There have been two lines of decisions in this State on the doctrine of assumed risk, and I have never been able to reconcile them. One line is represented by Porter v. Railroad, 71 Mo. 66; Fugler v. Bothe, 117 Mo. 475; s. c., 43 Mo. App. 44, and Steinhauser v. Spraul, 127 Mo. 562. Those cases maintain that if a servant accepts employment with knowledge that the machinery or implements he must work with are defective, or, of his own free will, continues in the employment, knowing such facts, he assumes the risk of injury from the defective appliances. This doctrine seems to me to be sound in principle. But there are later decisions opposed to it: Pauck v. Dressed Beef Co., 158 Mo. 467; Wendler v. House Furnishing Co., 165 Mo. 536; Curtis v. McNair, 173 Mo. 280; Cole ·. Transit Co., 183 Mo. 94. The still later case of Mathis v. Stock Yards Co., 185 Mo. 434, appeared to return to the doctrine of Porter v. Railroad, supra, and accepting it as the last utterance of the Supreme Court on the subject, I concurred in the opinion in Lee v. Railroad, 112 Mo. App. 372, 87 S. W. 12. But since that decision was rendered, the case of Blundell v. Miller Elevator Company, 189 Mo. 552, has been decided by the Supreme Court and in that opinion, a series of propositions on the doctrine of assumption of the risk, laid down, which are in line with Pauck v. Dressed Beef Company and similar cases and contrary to the rules declared in Porter v. Railroad. It is our duty to follow the most recent decision of the highest court in the State, and for that reason, I do not entirely concur in the opinion in this case, but do concur in the disposition made of it. I will say a word regarding the general principles which, in my opinion, ought to be recognized

in dealing with the defense of assumed risk.  If the conclusion that a servant assumes the risk of using defective tools and machinery is made to turn on whether or not the danger was so great and glaring that a man of ordinary prudence would have refused to encounter it, this fallacy prevails; that a servant will assume a great risk but not a slight one.  The test by the magnitude of the danger, properly pertains to the defense of contributory negligence and to none other.  If a servant engages to work with an obviously dangerous implement, or if, in the course of his employment, the implement he uses becomes obviously dangerous and he continues to use it without complaint, he ought to be held to have assumed the risk of being injured by it.  This is true, not because the servant has consented to take the chances of being hurt by the master's negligence; but because in consenting to use an implement known to be dangerous, he relieves the master of the duty to furnish a safe one; and because further, if a tool a servant is using gets out of order and dangerous and he makes no complaint and gives no notice to the master, not only is the presumption fair that the servant assumes the risk, but his silence deprives the master of one main source of information concerning the bad order of machinery and tools in the hands of his employees; a source he must largely rely on to ascertain when repairs are needed.  I consider that when no statute indicates a different public policy, a servant has a right to agree to use implements which are not in perfect order if he desires.  To hold otherwise abridges unnecessarily the freedom of contract.  On the other hand, courts should be careful about *presuming* that a servant accepts a particular risk.  Unless the conclusion is inevitable, whether he freely consented to the risk or was constrained in some manner, such as the fear of losing employment, is a question for the jury.