J H. ROWDEN, Respondent, v. SCHOENHERR-WALTON MINING COMPANY, Appellant.

Kansas City Court of Appeals, March 29, 1909.

1. MASTER AND SERVANT: Working Place: Risk: Conducting Business. The master must use reasonable care to furnish a reasonably safe place of work and cannot by negligent acts enhance the natural risks of the employment and his right to conduct his business in his own way does not include license to be negligent but is restricted to the limits of reasonable care.

2. ———: ———: ———: Making Place Safe. When the work is to secure and make safe an unsafe place the rule relating to an unsafe place in which to work can have no application and the laborer assumes the risk.

3. ———: ———: ———: Inspection: Contributory Negligence. The servant must protect himself and use his senses, but this does not require that of his own motion he will consume his master's time in making comprehensive inspection to detect dangers.

4. ——: Mines and Mining: Place of Work: Evidence: Negligence: Contributory Negligence. On the evidence it is held that the question of the master's negligence in failing to inspect and trim a roof in a mine after a blast and before sending the workmen back should go to the jury with the issue of plaintiff's contributory negligence.

5. ——: ——: ——: Pleading: Instruction. An instruction relating to the negligence of the master in inspecting a mine is held to come within the issues pleaded in the petition.

6. ——: ——: ——: ——: ——. *Held*, further, that the principal issue for the jury was whether the duty to inspect and trim the roof had been delegated to the servant or to the master, and the instruction sufficiently covered it.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs*, Judge.

AFFIRMED.

*Walden & Andrews* and *A. L. Berger* for appellant.

(1) The demurrer to the evidence of plaintiff should have been sustained. (2) The plaintiff assumed the risks, he knew and appreciated the dangers, he was an experienced miner, the dangers arose from and were incident to, the ordinary conduct of the business. Wire Works v. Morgan, 95 S. W. 531; Wilson v. Railroad (Mich.), 108 N. W. 1021; Jennings v. Railroad (Wash.), 34 Pac. 937; Knight v. Donnelly, 110 S. W. 687; Saller v. Shoe Co., 109 S. W. 794. (3) When a person, knowing the manner in which a business is conducted, and the conditions under which it is conducted, voluntarily enters the service, or where after entering upon such service he becomes aware of the manner in which the business is conducted and of the conditions under which it is conducted, and after having obtained such knowledge, voluntarily continues in such service, he assumes all the ordinary risk arising from the manner of conducting the business and from the conditions under which the business is conducted. Tuttle v. Railway, 122 U. S. 189; 4 Thompson

on Negligence, sec. 4611; 1 Bailey on Personal Injuries, sec. 469; Epperson v. Cable Co., 155 Mo. 346, 50 S. W. 795; Roberts v. Telephone Co., 166 Mo. 370, 66 S. W. 155; Cothran v. Packing Co., 98 Mo. App. 343, 75 S. W. 279; Minnier v. Railway, 167 Mo. 99, 66 S. W. 1072; Beckman v. Brewing Assn., 98 Mo. App. 555, 72 S. W. 710; Klein v. Shoe Co., 91 Mo. App. 102; Hurst v. Railway, 163 Mo. 309, 63 S. W. 695; Stagg v. Tea & Spice Co., 169 Mo. 489, 69 S. W. 391; Harff v. Green, 168 Mo. 308, 67 S. W. 576; Shields v. Railway, 87 Mo. App. 637; Shea v. Railway, 76 Mo. App. 29; Glover v. Nut & Bolt Works, 153 Mo. 327, 55 S. W. 88; Brening v. Medart, 56 Mo. App. 443; Moore v. Mill Co., 55 Mo. App. 491; Steinhauser v. Spraul, 127 Mo. 542, 28 S. W. 620; Halloran v. Foundry Co., 133 Mo. 470, 35 S. W. 260; Junior v. Elec. L. & P. Co., 127 Mo. 83, 29 S. W. 988; Fugler v. Bothe, 117 Mo. 475, 22 S. W. 113; Mathias v. Stockyards Co., 185 Mo. 434, 84 S. W. 66; Kane v. Railway (K. C. Ct. of App.), 87 S. W. 571; Evans v. Lumber Co. (N. H.), 38 Atl. 1099; Strattner v Electric Co. (Del.), 50 Atl. 57; Mellott v. Railroad (Ky.), 40 S. W. 696; Stucke v. Railroad (La.), 23 So. 342. (4) The plaintiff can recover only upon proof of the negligence alleged in his petition. Railroad v. Chatman, 124 Ga. 1026, 53 S. E. 692; Barker v. Collins (Del.), 53 Atl. 686; Jemming v. Railroad (Minn.), 104 N. W. 1079; McCoy v. Railroad (N. C.), 55 S. E. 270; Van Horn v. Transit Co., 198 Mo. 481, 95 S. W. 326; Bohn v. Railroad, 106 Mo. 434, 17 S. W. 780; Steinhauser v. Spraul, 127 Mo. 562, 28 S. W. 620; Blanton v. Dold, 100 Mo. 78, 18 S. W. 1149; Blundell v. Miller Mfg. Co., 88 S. W. 103; Bradley v. Railway, 138 Mo. 302, 39 S. W. 763; Armour v. Hahn, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440; Davis v. Mining Co., 117 Fed. 122, 54 C. C. A. 636; Browne v. King, 100 Fed. 561, 40 C. C. A. 545; 20 Am. and Eng. Ency. Law (2 Ed.), 57. (5) The court erred in giving the first instruction to the jury, which was given

at the request of plaintiff below. The court below erred in overruling the motions of defendant below in arrest of judgment and for a new trial.

*W. R. Schuck* and *P. E. Gardner* for respondent.

(1) The demurrer should not have been sustained. Plaintiff was injured by a slab falling from the roof at a place fifteen or twenty feet from where he had been working. It was the usual and ordinary custom of superintendent or ground boss to inspect and trim the roof after shooting. Doyle v. Trust Co., 140 Mo. 15; O'Mellia v. Railroad, 115 Mo. 205; Bultimaster v. St. Joseph, 70 Mo. App. 69. (2) The plaintiff did not assume risk. Sorder v. Railroad, 100 Mo. 682; Mahengos v. Railroad, 108 Mo. 201; Settle v. Railroad, 127 Mo. 336; Pauk v. Beef Co., 159 Mo. 467; Wendler v. House Furnishing Co., 165 Mo. 527; Curtis v. McNair, 173 Mo. 270; Shore v. Bridge Co., 111 Mo. App. 278; Cole v. Transit Co., 183 Mo. 81; Zellars v. Water & Light Co., 92 Mo. App. 109. (3) The case should have been submitted to the jury. Where the evidence is conflicting or where different inferences may be fairly drawn the question of negligence should be submitted to the jury. Doyle v. Trust Co., 140 Mo. 15; Fulso v. Railroad, 45 Mo. App. 541; Huhn v. Railroad, 92 Mo. 440.

JOHNSON, J.—Plaintiff sued for personal damages caused by the negligence of defendant, his employer. The answer is a general denial, pleas of contributory negligence and assumed risk. The trial resulted in a verdict and judgment for plaintiff in the sum of $1,000. Defendant appealed.

The principal contention of defendant is that the court erred in not peremptorily instructing the jury to return a verdict for defendant. At the time of the injury, February, 1908, defendant was engaged in the operation of a lead and zinc mine in Jasper county and

employed plaintiff to drill holes for blasting. A machine was used·for this purpose and plaintiff was assisted in his work by a helper.. Plaintiff's duties required him to drill and load the holes and fire the shots. It was customary to work during the day drilling and loading and to explode the charges the last thing in the evening. The workmen left the mine before the explosion occurred and did not return to work until the next morning. This method had been pursued by plaintiff and his helper the day before the injury. They drilled, loaded and fired a number of shots in the drift where they had been directed to work by defendant. The roof of this drift was about seven or eight feet above the floor and the nature of the material was such that the explosions were likely to crack and shatter the roof in a way to make it dangerous for miners to work under it until it had been inspected and trimmed. To trim it properly, it was necessary for a miner to detach with pick or spoon the stones, boulders and slabs that had been loosened by the shots and were likely to fall. When plaintiff and his helper went to work on the morning of the injury, the roof had not been trimmed. In a moment or two after they entered the drift, plaintiff left for some reason, not important, and the helper, observing some loose stones in the roof, began detaching them with a pick. Plaintiff returned to the drift while this was being done and immediately after his return, a large slab, twelve to fifteen feet long, ten to twelve feet wide, and from two to eight inches thick, fell from the roof. Plaintiff, who was under one edge of it, was struck and injured. The following extracts from the evidence deal with the subject of whose duty it was to inspect and trim the roof after the explosions:

From the testimony of plaintiff: "The Court: When you would fire a shot at night as you told Judge Walden, in the morning what was the rule there as to who should see the effect and ascertain the effect and

trim down the roof, if anybody? A. The boss or superintendent.

"The Court: The ground boss? A. Yes, sir.

"The Court: Did he do it that morning? A. I couldn't tell you. . . .

"Q. It was your duty to take down anything loosened up over your head by these shots? A. Where I was at work.

"Q. Around where the shots had been fired and where the machines were? A. No, sir; I wasn't supposed to take it down where the shots were.

"Q. Anything you noticed that was loose it was your duty to take down? A. Right over my work it was; not my duty, either, but I did it."

From the testimony of W. Cobble, the helper: "We had been working together; we wasn't together that morning; we went down together; he was up there and went away and came back when the slab fell. Q. Whose duty was it to examine and trim the roof over this place where this boulder fell? A. I couldn't say for certain whose duty it is; it is natural if a man sees anything loose over him he pulls it down. Q. Who looks after the roof in that mine there? A. The superintendent or ground boss I suppose are the natural men to look after it. The Court: Tell what you know about it. Q. Tell who looked after the roof in that mine, if you know. A. I don't know; we all took a hand in it; if there was anything over me I looked after it, but for me knowing who looked after it, I don't know for sure. . . . Q. What were your duties with reference to looking after any part of the roof? A. As I told you awhile ago, if I saw anything loose over me, I pulled it down, but I never went around to examine the roof. Q. Was it your duty to go around to examine the roof? A. I had no orders as to that; never was asked to go around and examine the roof."

From the testimony of another miner: Q. Whose duty was it to look after the roof at this place where

this stuff fell from? A. The machine man usually trims where he sets up the machine, but the superintendent gave me orders not to go under anything that looked bad, unless I sent either the ground boss or someone to have them trim it, but so far as knowing whose duty it was to trim this roof, I don't know. . . . Q. That is the general custom when the men go into the ground the machine men, not the shovelers, it is their duty to look and see what is the effect of the shots the night before? A. Yes, sir; they look to see. Q. Each machine man is supposed to look after his own drift? Isn't that the custom? A. I don't know about the trimming; they do the trimming around where they set the machine."

The negligence charged in the petition is that defendant "carelessly and negligently failed to inspect and examine the roof and walls of the drift wherein plaintiff was required to work, in a proper manner and carelessly and negligently failed to trim the roof and walls so as to work out loose boulders and slabs and rock therein, and carelessly and negligently failed to support the roof and walls of said drift with timbers and props so as to prevent the same from falling and caving in on said plaintiff and carelessly and negligently failed to provide a snow shed to cover plaintiff while at work and to prevent rock, earth and boulders from falling upon him and carelessly and negligently failed to adopt any means to render said roof and walls reasonably safe, but on the contrary, allowed said roof and walls to become and remain in a dangerous and defective condition by reason of boulders and rock and slabs therein becoming loosened and remaining loosened and liable to fall; that such dangerous and defective condition of the said roof and walls was known to defendant or could have been known to the defendant by the exercise of ordinary care on its part and that the same was unknown to plaintiff."

It is the duty of the master to exercise reasonable care to provide his servant with a reasonably safe place in which to work, or, to state it differently, the master must not, by negligent acts of omission or commission, enhance the natural risks of the employment. His right to conduct his business in his own way does not include the license to be negligent but is restricted to the limits of reasonable care; and the only risks assumed by the servant are those which are incidental to the employment, not those which arise from the negligence of the master. The operation of blasting in the drift created risks, some of which, it is obvious, should be classed as incidental to employment there. It appears to be conceded in the evidence that it was not practicable to timber the drift and the only method that could be pursued to prevent the fall of material from the roof was that of trimming. If defendant exercised reasonable care to inspect and trim the roof before sending men in there to work after shots had been fired, the risk of injury from falling material which still remained would be one of the natural risks of the business and, therefore, one assumed by plaintiff. But knowing, as it must have known, that the firing of shots would have a tendency to increase the danger of working under the roof, defendant was bound to provide for the inspection of the roof and for the removal therefrom of the dangerous material, in order that its servants might have the protection of reasonable safeguards. To omit the performance of this duty would constitute a breach of its obligation to plaintiff to exercise reasonable care to provide him a reasonably safe place in which to work. But it is argued that the testimony of plaintiff and his witnesses shows that defendant had made it the duty of a "machine man" such as plaintiff, to inspect and trim the roof in the vicinity of his machine, and, therefore, that to plaintiff himself had been assigned the task of keeping the roof over the place of his employment in a rea-

sonably safe condition. If, by express direction, or by implication from custom, acquiesced in by both parties, the duty of inspecting and trimming the roof had been delegated by defendant to plaintiff and his helper, in such case, plaintiff would have no cause of action. If the fall of the slab resulted from his failure to discharge such duty properly, that would be a result of his own fault, or if it occurred during the discharge of that duty in a proper manner, the result should be attributed to a cause that belonged to the natural risks of the employment. "When the work in hand is dangerous for the reason that it is to secure and make safe an unsafe place, the rule, as generally applied, that the master must furnish the servant a safe place in which to work can have no application. To say that a man can have a safe place to work in an unsafe place is an absurdity." [Henson v. Packing Co., 113 Mo. App. 618.]

The question of whether defendant had made it one of the duties of plaintiff and his helper to inspect and trim the roof is presented by the evidence as an issue of fact for the jury to determine. Plaintiff, himself, states that the duty in question was performed by and belonged to the ground boss. We think his evidence on this point is substantial, despite the fact which he and his other witnesses admit, that when they observed loosened stones or other material over the place where they were required to work, plaintiff and his helper removed the threatened danger by knocking down such stones or material. But it is a far cry from protecting one's own safety from threatened, obvious and imminent danger and being charged with the duty of inspecting and making safe an unsafe place. The former act springs from the instinct of self-preservation and is but an exercise of the degree of care the law imposes on a servant to make reasonable use of his senses to guard his own safety. Because the servant protects himself to this extent, or, in other words,

does nothing more than an ordinarily careful and prudent person in his situation would do, is no reason for saying, as a matter of law, that the master had become absolved from the performance of his duty to make reasonably safe an unsafe place before requiring the servant to work there. It is the duty of the servant to do the work the master assigns to him. "It is not supposed when given a task to perform that he will, on his own motion, consume his master's time in making comprehensive inspections to detect dangers. All that is required of him is that he use his senses in the position assigned him and as to dangers not to him apparent, and not inherent to the employment, he has the right to rely upon his master's judgment and humanity for the safety of his position." [Gibson v. Bridge Co., 112 Mo. App. 594.] The evidence is sufficient to take to the jury the issue of defendant's negligence in not inspecting and trimming the roof after the shots were fired and before requiring plaintiff to resume work in the drift.

The issue of contributory negligence likewise was one of fact for the jury. It appears that the detachment and fall of this large slab came as a surprise to plaintiff and his helper, who was removing some stones with his pick. Plaintiff had just returned to the drift and we do not feel justified in assuming that the appearance of the slab should have indicated to a person in his situation that its fall was imminent, or that he failed to make reasonable use of his senses for his own protection. The demurrer to the evidence was properly overruled.

Complaint is made of the following instruction given at the request of plaintiff: "The court instructs the jury that it was the duty of defendant to use ordinary care to furnish its employees in its mine a reasonably safe place in which to work, and if you believe and find from the evidence that on the ——— day of

February, 1908, plaintiff was in the employ of defendant as a miner, and as such miner it was his duty to go down into defendant's mine and work in a certain drift described in evidence, in assisting to get out ore, and that defendant carelessly and negligently allowed said drift to become and remain in a dangerous and defective condition by reason of its failure to inspect and trim the roof of said drift in a proper manner, so as to work out loose boulders and rock therein, and the defendant knew of such dangerous and defective condition, if you find it was dangerous and defective, of said roof, or could have known it by the exercise of ordinary care on its part, in time so that by the exercise of ordinary care on its part it could have made said roof reasonably safe before the injury to plaintiff, if you find he was injured, and if you find from the evidence that while said plaintiff was working in said drift in the scope of his employment and in the exercise of ordinary care on his part, he was injured by earth, rock and boulders falling from said roof down upon him, if from the evidence you believe he was injured, and that said injury to plaintiff was caused by the carelessness and negligence of defendant as aforesaid in allowing the roof of said drift to become and remain in said dangerous and defective condition, if you find it was dangerous and defective, then your verdict should be for the plaintiff, unless you further find from the evidence that the dangers arising to said plaintiff by reason of the dangerous and defective condition of said roof, if from the evidence you find said roof was in a dangerous and defective condition, were so obvious and imminent as to threaten immediate injury and were such that an ordinarily prudent person under the circumstances would not have remained in defendant's service and performed the duties he, the said plaintiff, was employed to perform."

We find the scope of the issues here submitted to be within those pleaded in the petition. It is argued

that the instruction fails to square with the rule "that where the servant is engaged in a work for the master of the character of that in question, in performing labor where the conditions are from time to time changing and the place being changed by the work of the servant and his coservants, it is incumbent upon the master to furnish only such a reasonably safe place as the necessary hazards of the employment will permit and to exercise such care to provide a safe place to perform the service as the character of the work done will justify."

We recognize as sound the rule thus stated but say that it has no material relation to the cause of action before us. True, the blasting changed the character of the place and made it more dangerous not only on account of the gases engendered, but also because of the effect of the explosions on the roof and walls; but the work was so arranged that the miners withdrew from the mine before the explosion and it is but fair to say they were not expected to return until the hazards caused by the changed conditions had been removed. An interim was provided for the master to make safe the unsafe place. No matter what was the origin of the dangerous condition it, nevertheless, became the duty of defendant to make the place reasonably safe before requiring the miners to go back there to work. The principal issue of fact for the jury to determine was whether the duty to inspect and trim the roof had been delegated to plaintiff or reserved by defendant. The instruction is not subject to the objections urged against it.

Other objections to the rulings of the court in giving and refusing instructions have been answered sufficiently in the views expressed. There is no substantial error in the record and accordingly the judgment is affirmed. All concur.