IVY MAUDE SUTHERLAND, a Minor, by her Next Friend, SARAH FEARNOW, Respondent, v. GARETSON-GREASON LUMBER COMPANY, Appellant.

Springfield Court of Appeals, July 7, 1910.

1. **MASTER AND SERVANT: Injury to Servant: Piling Lumber: Fellow-Servants.** Deceased was assisting a fellow-workman to move a small pile of lumber in defendant's box factory, so as to make room for the piling of other lumber. They attempted to move the whole pile at once; one of the boards of the small pile protruded so that it had been overlapped in placing boards on the adjacent pile which had been stacked by the servant whom deceased was assisting in moving the small pile; the adjacent pile toppled over and struck the deceased, from the effects of which he died. The evidence is examined and held insufficient to show any negligence on the part of the defendant; that whatever negligence there was, either in piling the lumber in the first place or in attempting to move it was the negligence of the fellow-servant.

2. ———: **Duty to Servant: Assumed Risk.** A master is not an insurer of the safety of the servant and is not liable merely because the servant is injured while in the performance of a task

assigned to him by the master, and the master is not bound to exercise extraordinary care and neither is he required to adopt the safest and most approved methods of conducting his business. Within the bounds of "reasonable care" he may conduct his business in his own way, and the risks of injury from such methods are risks assumed by the servant as a part of the contract of employment.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard*, Judge.

REVERSED.

*Watts, Williams & Dines* and *William R. Gentry* for appellant; *William N. Barron* of counsel.

(1) The mere fact that a pile of lumber fell down upon a man working in defendant's plant, did not prove, nor tend to prove negligence. Bowman v. Car & Foundry Co., 125 S. W. 1120; Bradley v. Tea & Coffee Co., 121 S. W. 919; McCormick Co. v. Zackzewski, 220 Ill. 522; Meixner v. Brewing Co., 60 Atl. 259; Branco v. Railroad, 119 Ia. 211; Weizenski v. Railroad, 94 N. Y. Sup. 869; Martin v. Royster Guano Co., 57 S. E. 681; McFadden v. Campbell, 34 N. Y. Sup. 137; Wojtelak v. Coal Co., 188 Mo. 260. (2) The defendant was not obliged to adopt any particular method. This is the rule laid down in this State. Jackson v. Railroad, 104 Mo. 448; Bradley v. Railroad, 138 Mo. 302; Minnier v. Railroad, 167 Mo. 99; Brands v. Car Co., 213 Mo. 698; Chrismer v. Telephone Co., 194 Mo. 189. (3) The demurrer to the evidence should have been sustained because the evidence showed clearly that the proximate cause of the death of the plaintiff's husband was the negligence of his fellow-servant Morgan. Jackson v. Mining Co., 106 Mo. App. 441; Hawk v. McLeod Co., 166 Mo. 121. (4) The plaintiff's evidence showed that the deceased met his death as the result of one of the risks naturally incident to the business and which he therefore assumed by his employment, hence the demurrer to the evidence should have been sustained.

Knorpp v. Wagner, 195 Mo. 637; Livingood v. Lead & Zinc Co., 179 Mo. 229; Mathis v. Stockyards Co., 185 Mo. 434.

*Abington & Phillips* for respondent.

(1) The court did not commit error in overruling defendant's demurrer to the evidence. Rigsby v. Oil Co., 115 Mo. App. 318; Moriarty v. Schwarzschild, 132 Mo. App. 650. (2) Deceased did not assume risk of the lumber pile falling on him. Robertson v. Construction Co., 115 Mo. App. 456; Rigsby v. Oil Co., 115 Mo. App. 297; Rigsby v. Oil Co., 130 Mo. App. 128.

GRAY, J.—Plaintiff instituted this suit in the circuit court of Butler county, to recover damages for the killing of her husband, Otto O. Sutherland, on the 4th day of May, 1906, through the alleged negligence of the defendant. There was a trial before the court and a jury which resulted in a verdict and judgment for the plaintiff, from which the defendant duly appealed.

The facts in the case are few and practically uncontradicted. The unfortunate plaintiff has rather a remarkable history. She was married at thirteen years of age. Her husband was killed the following year, and at the time this suit was instituted to recover damages for his death, she was not fifteen.

The deceased was engaged in working in a large room in the second story of the defendant's box factory at the town of Fisk in Butler county. The room was about fifty or sixty feet long and thirty or forty feet wide, and a little to the west of the middle a saw was located known as the "resaw," and its function was to resaw lumber that had been theretofore "flitched" from logs by another saw. Immediately east of the resaw was a track used for the purpose of conveying lumber from the north end of the room to the south. This track consisted of rollers with their axles inserted in parallel timbers some three feet

apart. Immediately east of this track were three short parallel pieces of timber about sixteen feet long and four feet wide, called "skids." The north end of the skids were twelve inches from the floor and the south ends eighteen inches. A part of the deceased's duties was to stand at the north end of the table containing the resaw and push boards through the same. Working with him was Seth Morgan, a fellow-servant, whose duty it was to stand at the south end of the table and receive each plank as it came from the resaw, and place the same on the skids in question.

On the day of deceased's death, and when they commenced work in the morning, there was a small pile of boards on the skids. There were about a dozen boards on that pile, and they were about twelve or fourteen feet long and three-eighths of an inch thick. The men had been directed by the foreman of the defendant, to pile lumber of the same dimension in the same pile. During the day there had been piled on the skids three additional piles of lumber. Just south of this small pile was a pile of lumber about four feet high, consisting of boards twelve and fourteen feet long, ten inches wide and three-sixteenths of an inch thick. Just south of this pile there were two other piles of lumber consisting of boards five-eighths of an inch thick. The pile immediately south of the small pile looked as though it leaned to the south, and if it fell at all, would fall in that direction. It became necessary to have more room for the three-sixteenths stuff, and thereupon, Mr. Morgan called to Sutherland to come and assist him in moving the small pile of lumber to the north, and this they attempted to do by Sutherland taking hold of the boards at one end and Morgan at the other, intending to move the whole pile at once. One of the boards in the small pile protruded from the south side so that when Morgan piled the three-sixteenths stuff, the boards overlapped and were piled on the protruding board. As they started to move the small pile to the north, the pile immediately

south toppled over and struck the deceased and knocked him against a roller, causing injuries from which he died on the same day.

The petition alleges "that the factory was under the supervision and control of a foreman by the name of Roy Case, who had complete control of the men and the management of the work in said factory; that the plaintiff's husband was in the employ of the defendant under the control and direction of said foreman, and that his duties were to resaw the lumber and to assist in removing the piles of said resawed lumber to make room for more lumber, and to do any other labor incident to the resawing of said lumber; that it was a part of the duty of the defendant to see that the lumber so cut or resawed was properly handled, and to exercise ordinary care and caution in stacking the same into safe, solid piles and to use precaution to prevent said piles from falling; that the defendant by its servants acting under the direction of said Roy Case, carelessly and negligently stacked the said resawed lumber into a high and dangerous pile, and carelessly and negligently left said pile of lumber without braces or standards or any other device to prevent same from falling; that the deceased was compelled by reason of his work to go near and to work near said high and dangerous pile of lumber; that on the 4th day of May, 1906, while deceased was moving some lumber aforesaid, said pile of lumber, so negligently and carelessly stacked, fell suddenly and violently against the deceased and injured him so seriously that he died; that it was the duty of the defendant to furnish deceased a reasonably safe place to work, and that defendant knew, or by the exercise of reasonable care, could have known that the lumber piled as aforesaid was dangerous and liable to fall, and that the death of plaintiff's husband was occasioned by the negligence and carelessness of the defendant in stacking said pile of lumber and leaving the same without braces."

The answer consisted of a general denial and pleas of contributory negligence and assumed risk.

We will first consider defendant's demurrer to the evidence and if we find the evidence was not sufficient to make a prima facie case for plaintiff, then the necessity of making an examination and passing upon the other questions presented will be obviated.

It is not necessary to cite authorities in support of the following propositions: A master is not an insurer of the safety of the servant and is not liable merely because the servant is injured while in the performance of a task assigned to him by the master; and the master is not bound to exercise extraordinary care and neither is he required to adopt the safest or most approved methods of conducting his business. Within the bounds of "reasonable care," he may conduct his business in his own way, and the risks of injury from such methods are risks assumed by the servant as a part of the contract of employment.

With these well-settled rules for our guidance, is the appellant liable under the facts in this case? Seth Morgan, who was working with the deceased at the time of the injury, testified as follows:

"Q. Tell the jury, Mr. Morgan, in your own language, just how that thing occurred. A. It was about ten minutes before twelve o'clock. We were fixing to move some lumber that was piled there by the resaw. It is our duty to move off the lumber. There was a pile piled up that seemed like it was going to fall towards the south and there was a small pile, that Mr. Case had told us to keep separate down here, that it kind of piled up on a little. We never noticed that and Mr. Sutherland got to one end of the pile and me to the other to drag this small pile back to make more room to put the three-sixteenth stuff, and that high pile turned and fell towards the north and struck Mr. Sutherland on the shoulder and knocked him over the roller."

The evidence showed that Morgan, and perhaps Sutherland, were working at the factory when Case was employed, and in regard to the directions given by Case as to how to pile the lumber, the testimony shows he directed the men to keep the lumber of the same dimensions together, and in addition thereto, Mr. Morgan testified as follows:

"Q. Did he tell you how to pile it? A. Yes, sir. He says, 'You fellows have been here longer than I have, go ahead and pile it the way you have always piled it.' "

The evidence further shows that Charles Tate was the foreman in the mill previous to the time Mr. Case was employed, and that under Mr. Tate they piled the lumber in the same manner they did after Mr. Case was employed.

There was evidence showing that lumber piles had fallen before in the mill, and that Case knew of the fact, but there was no evidence as to what caused them to fall. In the present case, however, the testimony shows that the lumber fell by reason of the fact that Morgan piled it on top of some of the boards in the small pile and pulled the boards out that were mixed with the larger pile, and that caused the larger pile to fall. There was no evidence that the foreman knew that lumber in the large pile and small pile lapped.

The plaintiff offered testimony tending to prove that braces or standards could have been used, and that the same would have made it safer, although her witnesses testified that they never knew of any such thing being done, and one witness, in behalf of plaintiff, testified that it all depended upon the manner in which the piles were erected, and said: "It might be piled carefully enough for a man to sleep by."

In Dickerson v. Jenkins, 128 S. W. 280, the plaintiff was employed in the defendant's factory, and was engaged with a fellow-servant in taking timbers from the piles where they had been placed and repiling them in an adjoining room. The timbers were eighteen feet

long, five and one-half inches wide and two and one-half inches thick, and weighed about one hundred and forty pounds. The pile was five feet high. There were three piles or stacks of them set close together. Plaintiff and his fellow-workman had removed all of the layers of the first stack but one and were in the act of stooping to pick up a timber from the last layer when the outside timber on the top layer of the second stack toppled off and fell on plaintiff, injuring him. The foreman of the paint room and another workman had piled these timbers, and it appears had used a crosspiece which was too short to extend under the end of the outside timber. The method used in piling the timber was that usually pursued in the shop. It was alleged in the petition that the plaintiff was inexperienced in the work of stacking and handling such lumber and was pursuing his work with care and caution at the time of his injuries. JOHNSON, Judge, delivered the opinion of the court, and said: "The method employed in the present instance of piling the timbers in layers separated by crosspieces was primitive and simple. To hold that the master should have used braces or standards to hold the timbers in place would be to hold him to the exercise of extraordinary care. We have not yet reached that stage in our jurisprudence where the entire care for the safety of the servant devolves on the master, and the safety of the servant is not to be intrusted to his own reasonable and independent action. The rule applicable to this case is that which governs what might be designated as the 'simple tool' cases. Where the servant is provided with an ordinary hammer, ax, chisel, or handsaw—common tools with which every one is familiar—he cannot complain of the master, and say that he should have been provided with a different kind of tool. So, where sticks of wood are piled as men have piled them through all ages, the servant required to unpile them cannot be heard to complain of the master for not having made a different sort of a pile.

Moreover, if it could be said that the foreman was negligent in making the pile too high or in not putting in a longer cross stick, his negligence was not the negligence of defendant, but was that of a fellow-servant of plaintiff. Piling and unpiling the timbers were duties belonging to the employment of plaintiff and his co-laborers."

In Bowman v. American Car & Foundry Co., 125 S. W. 1120, the plaintiff with two other men was engaged in piling pig iron in the yards of the defendant company along by the side of another pile that had stood there several months, when the old pile fell over and a number of the pieces of pig iron fell on plaintiff and inflicted very serious injuries. The piles were constructed in the form of piles of cord wood. VALLIANT, Judge, delivered the opinion of the court and said:

"There was no evidence of negligence on the part of the defendants to justify the submission of the case to the jury. There was no evidence that the pile that fell was negligently constructed or that it contained a defect that was known or could have been known by the exercise of ordinary care. The plaintiff could have introduced evidence to prove any defect in the construction or location of the pile that would indicate its dangerous condition, as that it was leaning to one side, or was not compact or otherwise, but the only thing he attempted to prove was that it was higher than usual. He offered no evidence to show that the height rendered it dangerous. Men of experience in that business could have been found to testify that the height of some seven or eight feet rendered the pile dangerous if such was the fact, but neither the court nor the jury could take judicial cognizance that such was the fact. Yet with no evidence except that the pile was seven or eight feet high the jury was left to conjecture that from that fact alone it was dangerous. The plaintiff knew more about piles of pig iron than the average juror, he had been engaged for several years in piling and seeing piles, and

he saw no danger, yet he asks the jury to conjecture that there was danger. . . . It did not devolve on the defendants to point out the cause, the burden was on the plaintiff to show that the pile fell because of its own inherent defect, and that it was a defect which the defendants knew or would have known if they had exercised reasonable care."

In Bradley v. Tea & Coffee Co., 213 Mo. 320, 111 S. W. 919, the plaintiff's husband was working for the defendant, and among other duties he was to perform was the selecting from the stock certain grades and kinds of coffee, and carry them to another floor of the building. The coffee was stored on the first floor and was piled up in rows three feet wide, that being the length of the coffee sacks, and extended from the west wall toward the east, some ten or twelve feet, and were about twelve feet in height. The sacks of coffee weighed from one hundred to two hundred pounds. One morning shortly after plaintiff's husband resumed his duties, he went to the row of coffee which had been partially removed and which was in a leaning condition; he was not informed of that fact, and began removing additional sacks of coffee therefrom, when, without warning, the leaning row fell upon him, broke his back and his death ensued.

At the close of the evidence, the defendant offered a demurrer, which was overruled and the cause submitted to the jury on plaintiff's testimony, and a verdict was found for the defendant and plaintiff appealed. In passing upon the question of assumed risk which had been raised in the case, the court said: "Some of the sacks had been removed by employees before the accident, and on the morning of the accident deceased was removing additional sacks from the pile himself, and it was not until he had removed several of them that the adjacent pile fell upon and crushed him.

"The law seems to be well settled in this State and elsewhere in this class of cases that if the place which

the master furnishes to the servant in which to labor is reasonably safe for that purpose, then the master has performed his full duty toward the servant, and he is not liable for injuries to the servant caused by dangers created by the servant in the performance of his duties. The reason for the rule is that the master can foresee and remedy the dangers which are connected with the place in which the servant is to labor, but not so in reference to dangers which are created or caused by the servant and which arise out of the performance of his duties. In most if not in all cases of that character such dangers depend upon the care and skill of the servant himself.

"For instance, the most hazardous of employments may be performed by a most skillful and careful operator; while, upon the other hand, an employment however free from danger may be rendered exceedingly hazarduous by the negligence or unskillfulness of the servant. In neither case can the master foresee how the servant will discharge each particular duty. And in neither case is the master liable for the injuries so inflicted by a servant upon himself."

This case from the Supreme Court is very *apropos* to the facts in the present case. Here was a pile of ordinary lumber, consisting of ordinary boards and only about four feet high, piled in the same manner that we see lumber in ordinary lumber yards. The servants had been told by the foreman that they had been in the master's employ longer than he had, and to go ahead and pile the lumber the way they always had. In making this pile of lumber, the fellow-servant of deceased piled it so that it leaned to the south and toward another pile of lumber about the same size, but there was a board in the small pile of lumber to the north that extended south, and on this board the lumber in the pile that afterward fell was placed. While the lumber was in this condition Morgan and the deceased undertook, in the absence of the foreman, to move the small pile of

lumber to the north. In doing so they pulled the board on which the lumber to the south had been placed and thereby caused the pile of lumber to the south to topple over toward the north and fall upon the deceased. There was no danger of the pile of lumber falling had it not been for the fact that they undertook to move the small pile next to it and in so doing pulled the board out of that pile and caused the other one to fall.

Under these circumstances, whatever negligence there was, either in piling the lumber in the first place, or in attempting to move it, was the negligent act of Morgan, the deceased's fellow-servant, and the defendant is not liable.

We have devoted more space to the facts and the law of this case then might appear to be necessary. This, in our judgment, however, has been necessary by the decisions of the St. Louis Court of Appeals in Rigsby v. Oil Well Supply Co., 115 Mo. App. 297, 91 S. W. 460, and 130 Mo. App. 128, 108 S. W. 1128. At the first trial in that case the court sustained a demurrer to the evidence and the plaintiff appealed and the court reversed and remanded the case. Many of the facts were very similar to the facts in the present case. The plaintiff was injured by a pile of lumber falling on him while he was stooped over to take hold of a plank in another pile. The petition alleged that the defendant's foreman, whose name was Austin, directed the plaintiff to pick up the plank, knowing the pile next to him had been negligently constructed and was liable to fall; that the foreman carelessly and negligently directed and ordered the plaintiff to go near said stacks of lumber which were insecure and dangerous, and about six feet high. The case was remanded with two possible grounds for recovery open to plaintiff; the negligence of defendant's foreman in ordering plaintiff to work in a dangerous place and the negligence of the foreman in ordering and permitting the lumber to be piled in stacks dangerously unstable, knowing the employees had to work

about the stacks. On the second trial, at the instance of the plaintiff, the court submitted only one ground of recovery, to-wit: That the stack of lumber that caused the injury was so carelessly piled under the direction of defendant's foreman, as to be dangerous to the employees working about the same, as the foreman well knew.

There was testimony that some of the timbers were very heavy and some of them of extra length and that they were stacked too high; that the attention of the foreman had been called to the danger of the lumber falling, and the stacking had been done under the eye and by the specific directions of the foreman; that the pile was higher than ordinary and the planks on top were shorter than the others; that the foreman had seen the lumber fall frequently, but continued to have the lumber piled in the dangerous manner.

GOODE, J., delivered the opinion on this second trial, and said: "After a careful examination we remain convinced of the propriety of our first decision, that it was a question for the jury as to whether plaintiff's injury was to be ascribed to negligence in not using care to pile the lumber so the stacks would not unnecessarily endanger employees working around them. We think it is apparent that due care was not used if some of the witnesses swore truly about the conditions and the conduct of the superintendent."

The facts in the case which the appellate court held carried it to the jury, are not in evidence in this case. The foreman did not direct the deceased to go about the pile of lumber at the time he was killed, and the evidence does not show that he knew, or might have known by the exercise of ordinary care, that the fellow-servant of deceased had stacked the pile of lumber that fell, on a board that extended from the other pile, and he did not know, and we cannot say that by the exercise of ordinary care should have known, that if the deceased and Morgan undertook to move the small pile of lumber that

they would undertake to move the board therein upon which the other lumber was piled without taking some precaution against the other pile of lumber falling.

The Legislature has not declared by statute that the master shall be liable for all injuries suffered by the servant while in his employ. And the fact that the servant lost his life while engaged in the performance of his duty to his master and has left others in distress, does not authorize the courts or the juries to force by execution money out of the pocket of the employer. The plaintiff is deserving of much sympathy, but that alone, does not authorize us to give her a judgment against the defendant. The defendant's liability is measured by the laws of the land, and it is the duty of the courts to render judgments in accordance therewith. With proper regard for these principles we do not believe the defendant is liable in this case and the judgment of the trial court will be reversed. All concur.