GEORGE W. BAXTER, Respondent, v. CAMPBELL LUMBER COMPANY, Appellant.

Springfield Court of Appeals, December 12, 1914.

1. MASTER AND SERVANT: Injuries: Fellow Servant's Negligence: Jury Question. Evidence in an action for personal injuries received while working in a sawmill examined and it is considered that whether or not the injury to plaintiff was occa-

sioned by negligence of fellow servants is a question for the jury.

2. ———: ———: **Reasonably Safe Place to Work: Jury Question.** In an action for personal injuries, under the evidence, the question is considered one for the jury whether or not the place where plaintiff was required to work was a reasonably safe one and whether or not the master had performed his duty in furnishing a reasonably safe place.

3. ———: **Injuries to Servant: Safe Place to Work: Master's Rights.** The master has a right to do his work in his own way, provided it is done with reasonable care and safety.

4. ———: **Temporary Place and Temporary Work: As Bearing On Question of Master's Duty.** That the work which the master gives his servant to do is merely for the time being or that the place is temporary is a circumstance to be considered in determining what is a reasonably safe place to work, but does not generally excuse the master as a matter of law.

5. ———: **Reasonably Safe Place to Work: Installing Blowpipe in Sawmill.** The rule requiring the master to furnish servant a reasonably safe place to work applied to the work of installing a blowpipe in a sawmill for collecting sawdust and shavings from the saws and planes.

6. ———: **Supervision of Master: Servant's Reliance on Master's Superior Knowledge and Supervision.** Where the servant is working under the surveillance of and in obedience to the direct and peremptory command of the master, quick obedience is required and the servant has a right to rely on the superior knowledge of the master and to obey without careful inspection. He has a right to assume that the master will not send him into a place of danger.

7. **INSTRUCTIONS: Master and Servant: Reasonably Safe Place to Work.** Action by servant against master for injuries received in a sawmill. Instruction complained of examined in connection with other instructions given and *held* not to impose too great a burden on the master in furnishing a reasonably safe place to work.

8. ———: **Considered All Together.** The instructions in a case must all be considered together.

9. **MASTER AND SERVANT: Negligence: Assuming Risks.** A servant does not assume the risks arising from the master's negligence.

186MoApp23

10. ———: **Assumption of Risk: Contributory Negligence.** The question of assumed risks and contributory negligence are closely allied and are often treated by the court as being the same.

11. **INSTRUCTIONS: Master and Servant: Assumption of Risk: Contributory Negligence.** Action by servant against master for personal injuries. Instructions examined and read together and considered not misleading, though in form submitting the defense of assumption of the risk instead of contributory negligence.

12. **APPELLATE PRACTICE: Harmless Error: Improper Evidence: Incidentally Admitted: Stricken Out.** In an action against a master by a servant for personal injuries it is not ground for reversal because evidence that defendant held liability insurance and would not be liable ultimately to pay was incidentally admitted into the case, where it was properly stricken out on objection being made.

13. **EVIDENCE: Harmless Error: Concerning Interest of Witness.** In an action against master for personal injuries, plaintiff was permitted to show that defendant's foreman, testifying for his employer, received $100 per month. If error was thereby committed it was harmless.

14. **DAMAGES: Personal Injuries: Verdict: Excessiveness.** In an action for personal injuries it was shown that plaintiff's leg was permanently injured and its strength and usefulness greatly impaired. A verdict for $2500 is not so grossly excessive as to warrant the appellate court to require a remittitur.

Appeal from Dunklin County Circuit Court.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*Fort & Zimmerman* for appellant.

(1) Respondent assumed the risk of being injured, in the manner and by the means charged, when he undertook to assist in the repair work at appellant's mill. Saversnick v. Schwarzschild & Sulzberger, 125 S. W. 1192; Brandt v. K. C. Breweries Co., 141 S. W. 445; Maynard v. Railroad, 137 S. W. 59; Lowe v. Railroad, 148 S. W. 956; Smith v. Forrester Nance Box Co., 92 S. W. 394; Jones v. Pioneer Cooperage Co., 134 Mo. App. 324; Rowden v. Schoenherr-

Walton Min. Co., 117 S. W. 695; Rigsby Oil Well Supply Co., 91 S. W. 460; Butz v. Murch Bros. Construction Co., 117 S. W. 636. (2) This case falls under a well defined exception to the general rule of assumption of risk, in that appellant was only doing temporary, or repair work in its mill, and trying to render an unsafe place, safe for its employees. Rigsby v. Oil Well Supply Co., 91 S. W. 466; Rowden v. Schoenherr-Walton Min. Co., 117 S. W. 695; Bennett v. Crystal Carbonate L. Co., 124 S. W. 612; Bradley v. Railroad, 39 S. W. 766; Henson v. Armour Packing Co., 88 S. W. 167. (3) The court erred in giving instruction number 1 for plaintiff which required appellant to use more than ordinary care to furnish respondent a safe place and appliances with which to work. McElhiney v. Friedman-Shelby Shoe Co., 138 S. W. 60; Henson v. Pascola Stave Co., 131 S. W. 931. (4) Instructions numbers 5, 6 and 7, given for the plaintiff, are tantamount to instructions on the defense of contributory negligence, provided they were proper declarations of law on that defense, but said instructions do not declare the law of the defense of assumption of risk. Bennett v. Crystal Carbonate Lime Co., 124 S. W. 612; Bradley v. Railroad, 39 S. W. 767.

*Bradley & McKay* for respondent.

(1) It is the duty of the master to see that the place and appliances in which and with which respondent was required to perform his work were in such condition that the servant could perform his duties with reasonable safety. Herdler v. Buck's Stove & Range Co., 136 Mo. 3; Sullivan v. Railroad, 107 Mo. 78; Stephens v. Railroad, 96 Mo. 212; Clark v. Iron & Foundry Co., 234 Mo. 436. (2) Respondent did not assume the risk of performing the work in the manner and by the means as directed. Bradley v. Northern Cent. Coal Co., 167 Mo. App. 177; Self v. White, 155

S. W. 840; Rowden v. Milling Co., 136 Mo. App. 376. (3) When directed by the master to perform certain services, the servant has the right to presume that he will not be sent into a place of danger and the master cannot so direct his servant without assuming the consequences. Parsons v. Hammond Packing Co., 96 Mo. App. 372; Bradford v. Railroad, 136 Mo. App. 711. (4) The court will not reverse a case upon an improper instruction, unless the same is so misleading as to constitute prejudicial error, and affect substantial justice. The instructions should be taken as a whole and considered together; the ones given for plaintiff and those given for defendant, and it is not to be presumed that the jury ignored those given for defendant and considered only those given for plaintiff in determining to which of the parties the verdict should be given, but that they did their duty and considered the instructions together. Campbell v. City of Stanberry, 105 Mo. App. 64; Sonnen v. Transit Co., 102 Mo. App. 274-276; Pendergrass v. Frisco, 162 S. W. 717; Reams v. Jones D. G. Co., 99 Mo. App. 403; Benjamin v. Railroad, 133 Mo. 274; Robinson v. St. Joseph, 97 Mo. App. 503; Eckle v. Ryland, 165 S. W. 1035; McElhiney v. Shoe Co., 158 Mo. App. 318; King v. King, 155 Mo. 425.

STATEMENT.—The plaintiff sues for personal injuries received while working as a common laborer at defendant's sawmill. At the time of his injury he was one of a gang of men working under the immediate direction of a "boss" or foreman in installing a new overhead conveyor or "blowpipe" used to collect and convey by suction the sawdust, shavings, etc., from the saws and planers to the engine room where this refuse served as fuel. This conveyor or blowpipe was being constructed at a considerable height from the floor and was made of joints or sections of metal pipe about twelve feet long and two feet in diaemter, fitted to-

gether like stove pipe, and each section weighed between two-hundred and three-hundred pounds. The sections had been brought in and laid on the floor and were being raised by a block and tackle, the pulley being fastened to the roof. The particular section being raised at the time was one containing side or "flue holes," as they are called, for the purpose of connecting smaller lateral pipes running to the separate saws and planers. These flue holes had the iron turned outward, projecting five or six inches, forming a short lateral pipe into which the lateral pipes were to be fitted. This section of large pipe was to be raised in a somewhat narrow space between the posts and the machinery. It was important that in raising it these projecting flues should not strike against the posts or machinery and be bent or indented.

This section of pipe was not directly under the pulley, being eight to ten feet back of a perpendicular line, so that the rope passing over the pulley came down to it at an angle and was fastened around the section of pipe a little back of the middle. In being raised, this would cause the section of pipe to swing forward as well as upward and the forward end to hang lower than the other.

The evidence shows that the old wooden blowpipe or conveyor had been recently taken down and sections thereof, together with shavings, sawdust and pieces of boards, left lying on the floor around and under this section of pipe. The sections of the old wooden pipe were some eighteen to twenty inches square. There were three sections of this old pipe lying there in a sort of triangle, the section of new pipe resting on one of them. One of the witnesses described it by saying that these sections of old pipe formed a sort of pit around the forward end of the new pipe being raised.

Just as the new pipe was about to start upward by reason of two men pulling down on the other end

of the rope passing over the overhead pulley, the foreman in charge ordered this plaintiff to "get in there and hold that and keep them flue holes from getting mashed." The plaintiff hesitated, as not exactly understanding, and the order was repeated directly to plaintiff. He obeyed, went in and took hold of the forward end of the pipe to steady it, it swung forward and in stepping backward the plaintiff's foot slipped or tripped and he stumbled over the sections of old pipe and was thrown down, by the weight of the pipe, on his knee, dislocating it. The plaintiff testified: "When they went to pull the blowpipe up I stepped back and hit my heel against that blowpipe that was torn out and my foot slipped from under me, and that throwed the whole weight of the pipe right here (Indicating) on my knee and it mashed me right down under the pipe, and I sunk down."

Another witness described it thus: "They were putting up this blowpipe, and each section of this blowpipe was something like twelve feet long, and something like twenty-three or twenty-five inches in diameter. We had a rope tied here (Indicating) something like the center of the pipe, and the rope was attached to a block up at the top, and they used the rope to pull the blowpipe up. Two men were handling the rope. The two men were Mr. Chatman and myself. We was pulling on the rope, and Mr. Baxter was supposed to have guided the pipe to keep from knocking the flue holes as we pulled it up. As we pulled it up it kindy swung around and knocked Mr. Baxter down, and he said the full weight of the pipe went on his knee. . . . He had to go into a place where there was some old blowpipe, a post, and some boards that had been planed but had not been takened away and was laying on the floor, and he didn't have room enough to step around as the pipe swayed around."

The petition sets forth the ultimate facts above stated, the order of the foreman to plaintiff to go into

this place and do the work he did, and, "that owing to the rubbish and shavings and plank piled up about said joint of blowpipe, and owing to the way the pulley and rope was fastened to the said joint of blowpipe plaintiff was unable to hold the pipe without injury as aforesaid and in endeavoring to brace himself and hold said joint of pipe, and while exercising due care on his part, he fell in the manner and by the means aforesaid, thus and thereby permanently injuring his leg, knee-joint and kneecap, all caused by the carelessness and negligence of the defendant company, under the order and direction of its foreman, Bud Mead, in requiring plaintiff to lift or assist in raising said joint of blowpipe in the manner and by the means as aforesaid, and in not furnishing plaintiff with a reasonably safe place to do and perform his work, and reasonably safe tools and appliances with which to do and perform the same." As is proper on defendant's appeal, the facts are stated according to the evidence favorable to plaintiff.

The answer is a general denial, with special pleas: (1) That plaintiff was already suffering from a stiff and diseased knee when he accepted employment from defendant and that his injury was within the assumed risk of, and incident to, his employment and physical condition; and (2) contributory negligence in that plaintiff voluntarily and carelessly placed himself in a position to cause his fall and injury complained of.

The errors complained of relate to (a) the refusal to sustain a demurrer to the evidence; (b) the giving of erroneous instructions; (c) the admission of improper evidence; and (d) that the verdict is excessive.

## OPINION.

STURGIS, J.—It is proper for us to remark that it materially aids the appellate courts for the parties

in their briefs to cite the Missouri cases in the official reports as well as by reference to the Southwestern Reporter when the cases cited are officially reported. This method of citation to the reporter system alone is not subject to objection in citing cases from other States. This is a growing tendency of attorneys and we make this observation generally rather than as applied to this particular case.

Appellant's first point is that the evidence shows that the injury was caused by the negligence of plaintiff's fellow servants in giving the rope a quick jerk and thereby suddenly and violently throwing the pipe against plaintiff, citing Madden v. Mo. Pac. R. Co., 167 Mo. App. 143, 147, 151 S. W. 489; Henson v. Pascola Stave Co., 151 Mo. App. 234, 243, 131 S. W. 931. That defendant in this kind of a case is not liable for an injury due solely to the negligence of a fellow servant is conceded, Rigsby v. Oil Well Supply Co., 115 Mo. App. 297, 318, 91 S. W. 460, and we think defendant would have been entitled to an instruction submitting this question to the jury. There is much evidence, however, tending to show that the pulling of the rope was not unduly violent or sudden and we cannot hold as a matter of law that this was the sole proximate cause of the injury; in fact, the defendant's evidence tends to show that there was so little violence in the forward movement of the pipe that plaintiff merely "set down" instead of being knocked down or falling over the old pipe.

Defendant contends that it would be requiring more than ordinary care to have required it to make plaintiff's place of work more safe by removing the old pipe and debris or to adjust or fasten the block and tackle in a safer way, and that to do so violates the rule that the master has a right to do his work in his own way, provided it be done with reasonable care and safety. [Dickinson v. Jenkins, 144 Mo. App. 132, 136, 128 S. W. 280; Sutherland v. Caretson-Creason

Lumber Co., 149 Mo. App. 338, 343, 130 S. W. 40.]
We think, however, that under the evidence here the
question is one for the jury as to whether, considering
the manner of doing this work, the place where plain-
tiff was required to go to perform the same was rea-
sonably safe and whether the master had exercised
ordinary care in that regard.

Nor do we think this is a case falling within the
exceptions to the rule of furnishing a safe place to
work applicable to repair work in making safer an un-
safe place, Rowden v. Schoenherr-Walton Min. Co., 136
Mo. App. 376, 384, 117 S. W. 695, or to dangers tem-
porary and inherent in the nature and progress of the
work. [Rigsby v. Oil Well Supply Co., 115 Mo. App.
297, 318, 91 S. W. 460.] The work of installing this
blowpipe had nothing to do with making safe the place
where plaintiff was ordered to go in and do this work.
That the given work or the place of doing it is tem-
porary is a circumstance to be considered in determin-
ing what is reasonable care on the master's part in pro-
viding a reasonably safe place to work, but does not
usually excuse him as a matter of law. The shortness
of the time and ease with which the place of appliances
can be made safer is also a fact to be considered and
in this case makes a question for the jury.

As bearing on this point and that of assumption
of risk and contributory negligence raised by appel-
lant, it must be borne in mind that the plaintiff was
working under the eye and in obedience to the direct
and peremptory command of the master requiring
quick obedience. In such cases, the servant has a right
to rely on the superior knowledge of the master and to
obey without careful inspection. He may assume that
the master will not send him into a place of danger.
[Parsons v. Hammond Packing Co., 96 Mo. App. 372,
381, 70 S. W. 519; Bradford v. Railroad, 136 Mo. App.
705, 711, 119 S. W. 32; Stephens v. Railway Co., 96
Mo. 207, 212, 9 S. W. 589; Herdler v. Stove & Range

Co., 136 Mo. 3, 17, 37 S. W. 115; Clark v. Iron & Foundry Co., 234 Mo. 436, 450, 137 S. W. 577.]    We hold that this case was one for the jury.

What is designated as instruction number one, for plaintiff, is more in the nature of a preamble to the more specific instructions following it.    It told the jury that it was defendant's duty to furnish plaintiff a reasonably safe place in which to work.    Such general declarations of the master's duty are frequently given and then followed, as was the case here, by specific instructions applying this general principle to the particular facts of the case.    [Overby v. Mears Min. Co., 144 Mo. App. 363, 374, 128 S. W. 813.]    It is true, as asserted by appellant and conceded by the respondent, that the master's duty goes no further in this respect than to *use ordinary care* to furnish a reasonably safe place in which to work.    [Bennett v. Crystal Carbonate Lime Co., 146 Mo. App. 565, 577, 124 S. W. 608; Bradley v. Railway Company, 138 Mo. 293, 307, 39 S. W. 763; McElhiney v. Friedman-Shelby Shoe Co., 158 Mo. App. 318, 328, 138 S. W. 60.]    But, it is stated or intimated in each of these cases that such error in the abstract statement of the law is subject to criticism but is not generally reversible error if the other instructions correctly state the law as applied to the particular facts, and that the instructions must all be read together.    Here, the next instruction, applying this principle to the facts of this case, tells the jury that they must find that plaintiff's injuries were caused by defendant's carelessness and negligence (the contrary of due care) in failing to furnish a reasonably safe place.    An instruction given for appellant told the jury that defendant was not an insurer of plaintiff's safety and did not guarantee against his injury while working for it, but that a recovery must be based on defendant's negligence.    We rule that the error does not call for a reversal.

Both parties to this case have given undue promi-
nece to the question of assumed risk. There is little in
this case indicating that this was a mere accident which
could not have been foreseen or guarded against by or-
dinary care, or that it was due to any hidden defect or
danger. It is a question of negligence on one hand and
contributory negligence on the other. It is now so well
settled as to need no citation of authorities that the
servant does not assume risks arising from the mas-
ter's negligence. [Brady v. Railroad, 206 Mo. 509, 528,
102 S. W. 978, 105 S. W. 1195.] The question of as-
sumed risks of known danger and contributory negli-
gence by going into the same are closely allied and
often treated of by the courts as being the same. In
the present case the court instructed the jury (num-
bered 4) that the employee does not assume the risks
incident to the employment, unless such risks and dan-
gers are so apparent that an ordinarily prudent man
would not undertake the same; and, (numbered 5 and
6) that the verdict should be for plaintiff on the de-
fense of assumption of risk in using a dangerous place
to work at the master's directions, unless the danger
was so obvious and glaring as to deter a man of ordi-
nary prudence from so doing. This is more correctly
the law as applied to contributory negligence based on
this ground. [Rigsby v. Oil Well Supply Co., 115 Mo.
App. 297, 322, 91 S. W. 460.] The courts, however,
sometimes speak of this as assumption of risk. Thus,
in Parsons v. Hammond Packing Co., 96 Mo. App. 372,
381, 70 S. W. 519, the court used this language: "The
mere fact that the servant knows the defects may not
charge him with contributory negligence or assumption
of the risk growing out of them. . . . But if the
defective appliance, although dangerous, is not of such
a character that it may not be reasonably used by the
exercise of skill and diligence, the servant does not as-
sume the risk." [See, also, Bradford v. Railroad, 136
Mo. App. 705, 710, 119 S. W. 32.] The principles of

law declared by these instructions, criticised by appellant, are correct and the error is in designating the defense as assumption of risk instead of contributory negligence. Jurors are not likely, however, to be misled in this way, as they look to the general meaning of an instruction rather than to its analysis or the legal terms used. [Baker v. City of Independence, 93 Mo. App. 165, 170.] Besides, there was a correct instruction given for appellant on assumption of risk, telling the jury that plaintiff assumed the risks ordinarily incident to the work in question, and if he was injured by the dangers incident to the work to find for defendant. The plaintiff did not adopt the safest way in the trial of this case, when a safer one was open to him, in that he asked *too many* instructions on the question of assumed risk. Any negligence in that respect, however, will not be held as reversible error.

The defendant complains that the court admitted evidence that the defendant held liability insurance and that an insurance company would be ultimately liable for the verdict rendered. We find, however, that this evidence came in in an incidental manner and was promptly stricken out on objection being made. The court also permitted the plaintiff to show the amount of wages (one hundred dollars per month) the defendant's foreman was receiving, restricting this evidence to showing his interest in the case. The court, perhaps, went too far in this respect, as the fact of his being in defendant's employ was sufficient, but we think the error was harmless.

The defendant claims that the verdict, which was for $2500, is excessive in view of plaintiff's age, earning capacity, and that any permanent injury to his knee is partially due to his previous rheumatism therein. But that was for the jury. A reading of the evidence has convinced us that the amount awarded is not so grossly excessive as to authorize the exercise of our limited right to require a remittitur. There is evi-

dence warranting the jury in finding that plaintiff's leg is permanently injured and its strength and usefulness greatly impaired. Other suggested errors have been noticed but do not warrant further discussion. .

The judgment will be affirmed.

*Robertson, P. J.,* and *Farrington, J.,* concur.