PETER GORDY, Respondent, v. MANUFAC-
TURERS COAL & COKE COMPANY, Appellant.

**Kansas City Court of Appeals, November 21, 1910.**

1. **MASTER AND SERVANT: Duty to Inspect: Instructions.**
Plaintiff, an employee of a coal mining company, was injured
by a defective coal car. There was evidence on his part that
it was not his duty to inspect coal cars, and by defendant that
it was his duty to do so. The court instructed the jury that
it was not plaintiff's duty to inspect said cars. *Held,* it was
error to so instruct the jury, and this error was not cured by an
instruction given on behalf of defendant which was in con-
flict therewith.

2. ———: ———: ———: Where there is substantial evidence
tendering an issue of fact as to the duty of plaintiff to inspect
coal cars, it is error to tell the jury that, as a matter of law,
it was not his duty to do so. This was for the jury to determine
under the evidence.

Appeal from Schuyler Circuit Court.—*Hon. Nat. M.
Shelton,* Judge.

REVERSED AND REMANDED.

*Campbell & Ellison* for appellant.

(1) The court erred in refusing the demurrer
tendered at the close of the plaintiff's evidence. There
was no evidence showing or tending to show that the
car which is claimed was defective had been defective
for any length of time prior to the accident. The only
evidence tending to show that particular car was de-
fective was the evidence of the plaintiff to the effect
that he could see that the wheels of the car were wab-
bly and this he saw during the time the car was run-
ning down the incline at a rate of speed faster than a
man could run and he was in sight of that car only
for a distance of a few feet. There was, therefore, no

evidence that defendant had had opportunity or time
to repair the defect, if any existed. Without such proof
the plaintiff failed to make a case for the jury. Ab-
bott v. Mining Co., 112 Mo. App. 550; Pavey v. Rail-
road, 85 Mo. App. 218; Kelley v. Railroad, 105 Mo.
App. 376. (2) The court erred in giving instruction
number one on the part of the plaintiff and particularly
in that part of the instruction wherein the jury were
told that it was not the duty of the plaintiff to in-
spect or examine cars. That that duty the law imposed
upon the defendant, and that plaintiff had the right to
assume that defendant had discharged that duty. That
is to say, the court told the jury that the plaintiff had
the right to assume that defendant had furnished rea-
sonably safe cars. This instruction in that regard
would be correct, but for the evidence of the plaintiff
which was to the effect that he had set off four or
five cars for repairs within the next two weeks before
the accident, and that there were many defective cars,
in use in the mine, and that the mine foreman had
directed him to use the cars and set them off as they
could be repaired. Appellant therefore contends that
on the admission of the plaintiff that he knew they
were defective cars, it was error for the court to tell
the jury that he had the right to assume the cars were
safe. Lynch v. Railroad, 112 Mo. 420; Adams v. Ma-
chine Co., 110 Mo. App. 367; Haycroft v. Grisby, 88
Mo. App. 354. (3) Instruction number one is further
erroneous in this that the jury are therein told that
it was not the duty of plaintiff to inspect or examine
cars. This clause in said instruction is erroneous and
misleading under the evidence in this case because
plaintiff on his direct examination testified that he
had been instructed by the mine foreman to set off
cars as they could be repaired and he further testified
that it was not his business to inspect or examine cars,
and then on his cross-examination admitted that with-
in the next two weeks before the accident he had set

off some four or five cars for repairs. The defendant's evidence on this subject was to the effect that plaintiff had been instructed to set out cars that needed repairing. There was, therefore, a conflict in the testimony, and it was error for the court to assume the evidence of either party to be true. Klein v. Company, 117 Mo. App. 991; Browning v. Company, 118 Mo. App. 449.

*Morris & Mills* and *Higbee & Mills* for respondent.

(1) There was no error in overruling the demurrer to the evidence. There was substantial evidence introduced that the car was defective; its wheels were wabbly, showing that the axles were loose; it was running down the incline empty at an unusual speed; that it did not run freely but lagged back against the truck behind it; that this condition and speed had a tendency to derail it; that some two weeks before this Stein, the foreman, refused to have cars repaired; that he ordered plaintiff to use them; he testified he knew their condition and evidently thought they could be used safely. The neglect to repair, coupled with speed, caused plaintiff's injury. 4 Thomp. Neg., sec. 3986 and notes; Attix v. Sandstone Co., 88 N. W. 436; Tiemeg v. Railroad, 23 N. W. 229; Sheedy v. Railroad, 57 N. W. 60; Duerst v. Stamping Co., 163 Mo. 608; Dodge v. Mfrs. C. & C. Co., 115 Mo. App. 501. (2) There was no error in allowing plaintiff to prove that a number of trucks were defective two weeks before the accident, and that defendant's foreman ordered plaintiff to continue to use them. It was proof of a defective condition and notice thereof. Franklin v. Railroad, 97 Mo. App. 473, distinguishing Railroad v. Nelms, 83 Ga. 70; Smallwood v. Tipton, 63 Mo. App. 234; Rose v. St. Louis, 152 Mo. 602; Calcaterra v. Iovaldi, 123 Mo. App. 347; McGinnis v. Printing Co.,

122 Mo. App. 227; Winkle v. Dry Goods Co., 132 Mo. App. 656; Bunkle v. Tel. Co., 115 Mo. App. 36. (3) There was no error in plaintiff's instruction one. There was no evidence that the trucks were glaringly unsafe. The foreman had ordered plaintiff to use the cars. This instruction was proper upon the evidence. The court gave defendant's instruction three, which meets appellant's criticism of this instruction. The two instructions, read together, presented the law more favorably for defendant than it was entitled to, as there was no evidence that plaintiff was required to inspect cars.

JOHNSON, J.—Action by a servant to recover damages for personal injuries alleged to have been caused by the negligence of his master. A trial to a jury resulted in a verdict and judgment for plaintiff for five hundred dollars, and the cause is here on the appeal of defendant.

Facts of the case are correctly stated by counsel for plaintiff as follows: "Defendant owns and operates a coal mine in Schuyler county. The coal is loaded into cars and hauled up out of the mine on a track of iron rails that rises on an incline from the mine to the tipple, motive power being a steam engine. Plaintiff was employed by defendant in the fall of 1906, as a trip rider, his duties being to take charge of the loaded cars at the foot of the incline and ride them to the tipple and when emptied he would get on the rear car and ride them back into the mine and turn them over to the drivers. He always rode the trips. Albert Stein was mine foreman until November 16th. About the last of October plaintiff reported to Stein that there were some cars needing repairing and Stein said to him: 'If we set off all the defective cars we will not have enough to run; you will have to use them and set them off as we can have them re-

paired.'   He said I would have to go ahead and use them.   If he set out all the defective cars he would not have enough to run with.   Plaintiff testified there were a number of defective cars.   'Some were busted at the bottom.   Some of the side boards were pushed against the side of the wheel.   Some of the flanges were resting on the wheels and they were loose.   The axles on these cars were fastened to the bed with bolts and they were rotten.   Some of the beds were loose and the axles were loose.   It would make them leave the tracks quicker and have a tendency to make it run off the track when running at a high rate of speed.'   So under the orders of the foreman the cars were not repaired but continued in use.   On November 19th, plaintiff took a trip of five loaded cars out of the mine to the tipple, riding on the rear car, in which position he would not notice the wheels of that car. The car that he rode out on was the front car on the return trip.   After the cars were started back he jumped on the rear car.   The weight of the cars runs them down the incline and the engineer can hold them back in the train.   The trip rider has no power over them.   On this return trip it seems the cars ran much faster than usual.   After the cars had started down the incline, plaintiff noticed a defective car in the front end, the wheels wabbled.   He could see this from his position on the rear car; he could see the wheels on the front car wabbling; this car did not travel as fast as the other cars, but lagged back.   It jumped the track and threw the other cars off.   Plaintiff had braced himself, but it threw him into the next car and hurt his side and knee, resulting in permanently injuring and weakening the knee joint and ligaments, so that he suffered much pain and lost considerable time from his work, and has ever since had a weak knee that is liable to slip out of place when he is working.''

Mr. Stein testified that he was mine foreman for defendant up until November 16th, that Gordy in do-

ing his work from time to time would find cars needing repairs, and that he had instructed Gordy to set out any cars that needed repairing; denies that Gordy ever reported cars as being in a dangerous condition and that he never told him, "If we throw out all the defective cars we would not have enough to get the coal out."

"I hired the blacksmith to repair the cars and told him (Gordy) to set the cars out. I had seen the cars and knew their condition. They were probably in as good shape as they are around at the mines. They needed repairing occasionally. I instructed Gordy to set out any cars that needed repairing. I did not instruct him to go ahead and use them and that I would have them repaired as fast as I could get to them."

Plaintiff testified he never inspected the cars; that was not his business.

In the first instruction given at the request of plaintiff, the court told the jury "that it was the duty of the defendant to use ordinary and reasonable diligence to furnish plaintiff cars that were reasonably safe for the purpose for which he was required to use them. That *it was not the duty of the plaintiff to inspect or examine them; that duty the law imposed upon the defendant.* The plaintiff has a right to assume the defendant discharged that duty and to use such cars as defendant furnished him to use, unless you find from the evidence they were so glaringly defective that a man of ordinary prudence would not have used them."

In an instruction given at the request of defendant the jury were told: "The court further instructs the jury that if you find and believe from the evidence that before the 19th day of November, 1906, defendant's mine foreman had instructed plaintiff to watch for cars that were defective and in need of repair and to set out such car for repairs, it then became his duty to do so, plaintiff cannot recover if he failed in his

duty in this respect and your verdict must be for the defendant, regardless of any other fact or issue.''

Without going into details, we understand the position of plaintiff—supported by substantial evidence —to be that he was not charged with the duty of inspecting cars but only with the duty of reporting cars he might discover in bad condition while in the performance of his work; while on the other hand the evidence of defendant will support a reasonable inference that it was one of the duties of plaintiff to inspect cars and to report all cars found to be defective. In this state of case, it is apparent the court did not err in refusing defendant's demurrer to the evidence, and that it did err in giving the direction expressed in the italicized part of the instruction of plaintiff above quoted.

Defendant's duty of mastership compelled it to exercise reasonable care to maintain the cars used in the mine in a reasonably safe condition for use and if plaintiff was injured in consequence of a negligent breach of such duty, he may recover his damages, provided he was not guilty of contributory negligence. His evidence accuses defendant of negligence in requiring him to work with a defective car and tends to exculpate himself from the imputation of negligence in not discovering the defect before he did, and in continuing the work after he did discover it. If, as he says, defendant had not charged him with the performance of the duty of inspecting the cars, he should not be held responsible for the consequences of a breach of that duty and should be held free from culpability if he made such reasonable use of his senses as the proper performance of his prescribed duties and the circumstances of the situation afforded him. His evidence presents the negligence of defendant and his contributory negligence as issues of fact for the triers of fact to determine and, as we said, the learned trial judge properly overruled the demurrer to the evidence.

But in telling the jury that, as a matter of law, it was not the duty of plaintiff to inspect the cars, the trial court ignored the evidence of defendant and took from the jury the determination of an issue of fact clearly and sharply tendered by substantial evidence. The law did impose on defendant the duty of maintaining the cars in a proper state of repair, but defendant, in the performance of that duty, had the right to employ a servant to make the necessary inspection, and if plaintiff was the servant employed to do that work, he could not recover for an injury resulting from his own failure to do the work assigned him. What we said in the following quotation from Rowden v. Mining Co., 136 Mo. App. 384, is pertinent and decisive:

"If, by express direction, or by implication from custom, acquiesced in by both parties, the duty of inspecting and trimming the roof had been delegated to plaintiff and his helper, in such case, plaintiff would have no cause of action. If the fall of the slab resulted from his failure to discharge such duty properly, that would be a result of his own fault, or if it occurred during the discharge of that duty in a proper manner, the result should be attributed to a cause that belonged to the natural risks of the employment. 'When the work in hand is dangerous for the reason that it is to secure and make safe an unsafe place, the rule, as generally applied, that the master must furnish the servant a safe place in which to work can have no application. To say that a man can have a safe place to work in an unsafe place is an absurdity.' [Henson v. Packing Co., 113 Mo. App. 618.] The question of whether defendant had made it one of the duties of plaintiff and his helper to inspect and trim the roof is presented by the evidence as an issue of fact for the jury to determine."

The error in the instruction was prejudicial and was not cured by the instruction given at the request of defendant above copied. If that instruction is to be

accorded the meaning placed upon it by plaintiff, it was in conflict with the instruction of plaintiff, and, consequently, could not be curative.

We find no other error in the record than that noted. The judgment is reversed and the cause remanded. All concur.